[Cite as *State ex rel. Kent State Univ. v. Indus. Comm.*, 2016-Ohio-1032.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Kent State University, | : | |
| Relator, | : | |
| v. | : | No. 15AP-416 |
| Industrial Commission of Ohio, John Daugintis, and Eagle Pump & Equipment, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 15, 2016

**On brief:** *Amer Cunningham Co. LPA,* and *Thomas M. Saxer,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

**On brief:** *Nager, Romaine & Schneiberg Co. LPA, Jerald A. Schneiberg, Jennifer L. Lawther, Daniel A. Kirschner,* and *Stacey M. Callen,* for respondent John A. Daugintis.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Kent State University ("Kent State") filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") to John Daugintis.

{¶ 2} In accordance with Loc.R. 13(M), the case was referred to a magistrate to conduct proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, which contains findings of fact and

conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 3} Counsel for Kent State has filed objections to the magistrate's decision, which are:

> A. The Magistrate's Decision effectively places the burden of proof on Relator to prove Claimant is not permanently and totally disabled in violation of Ohio Administrative Code §4121-3-34(D)(3)(a).
>
> B. There was competent medical evidence presented that Claimant is not permanently and totally disabled from his allowed physical conditions.

{¶ 4} At this stage of the proceedings we, as an appellate court, are not dealing with burden of proof issues. We are instead evaluating whether or not some evidence supports the decision of the commission to award PTD compensation. The commission has already done the weighing and has determined that an award of PTD compensation is appropriate given the injuries suffered by Daugintis and the application of the disability factors.

{¶ 5} The first objection, labeled "A," is overruled.

{¶ 6} The second objection is likewise without merit. The issue at this stage of the proceedings is not whether competent credible evidence would have supported a different outcome of the proceedings before the commission, but whether some evidence supported the award of PTD compensation. Some evidence clearly did support the award.

{¶ 7} The second objection, labeled "B," is overruled.

{¶ 8} Both objections having been overruled, we adopt the findings of fact and conclusions of law in the magistrate's decision. As a result, we deny the request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____

# A P P E N D I X

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Kent State University,    :

        Relator,                                           :

v.                                                             :                          No. 15AP-416

Industrial Commission of Ohio,                  :                       (REGULAR CALENDAR)
John Daugintis, and Eagle Pump &
Equipment, Inc.,                                       :

        Respondents.                                  :

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on December 21, 2015

---

*Amer Cunningham Co. LPA,* and *Thomas M. Saxer,* for
relator.

*Michael DeWine*, Attorney General, and *Shaun P. Omen,* for
respondent Industrial Commission of Ohio.

*Nager, Romaine & Schneiberg Co LPA, Jerald A.
Schneiberg, Jennifer L. Lawther,* and *Daniel A. Kirschner,*
for respondent John A. Daugintis.

---

### IN MANDAMUS

{¶ 9} In this original action, relator, Kent State University ("Kent State" or "relator"), requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the January 29, 2015 order of the commission that exercised R.C. 4123.52 continuing jurisdiction over the October 20, 2014 order of its staff hearing officer ("SHO") that had denied the application for permanent total disability

("PTD") compensation filed by respondent, John Daugintis, and to enter an order reinstating the October 20, 2014 SHO's order.

Findings of Fact:

{¶ 10} 1.   John Daugintis ("claimant") has two industrial claims corresponding to injuries that occurred in 1996 and 2006.

{¶ 11} 2.  On June 27, 1996, claimant injured his right shoulder, left foot, and left elbow while employed as a shop manager for respondent, Eagle Pump & Equipment, Inc., a state-fund employer.  The industrial claim (No. 96-417416) is allowed for:

> Contusion right shoulder; sprain of left foot; right shoulder tendonitis; tear right rotator cuff; localized, primary osteoarthritis, right shoulder; lateral epicondylitis left elbow epicondyle.

{¶ 12} 3.  On June 5, 2006, claimant injured his left shoulder while employed as a laborer for Kent State.  The industrial claim (No. 06-386334) is allowed for:

> Subscapularis tear left shoulder; left shoulder impingement synovitis; supraspinatus tendonitis left shoulder; bicipital tenosynovitis, left; depressive psychosis/moderate.

{¶ 13} 4. On July 31, 2013, at claimant's request, he was examined by psychologist Raymond D. Richetta, Ph.D.  In his five-page narrative report, Dr. Richetta opined:

> Mr. Daugintis struggles to cope with daily life. He is negative, disinterested, and poorly motivated. These qualities are all symptoms of the allowed depression. He has little social interest and is not comfortable with the general public. His concentration is limited. He would be unable to relate to co-workers or supervisors. He could not remember and follow more than very simple instructions. His sleep problems preclude his maintaining a regular schedule; he could not be at work at a consistent time. He would be unable to tolerate vocational rehabilitation. Mr. Daugintis is permanently end totally disabled from engaging in any form of sustained remunerative employment due to the allowed Major Depressive Disorder, Single Episode, Moderate.

{¶ 14} 5. On January 28, 2014, claimant filed an application for PTD compensation.  In support, claimant submitted the report of Dr. Richetta.

{¶ 15} 6. The PTD application form asks the applicant to list his or her industrial claims. In response, claimant listed the claim numbers for his 1996 and 2006 claims.

{¶ 16} 7. On March 19, 2014, at the request of Kent State, claimant was examined by Douglas C. Gula, D.O. Dr. Gula examined only for the allowed physical conditions of the 2006 claim. In his seven-page report, Dr. Gula opined:

> In summary, it is my opinion Mr. Daugintis is not permanently and totally disabled as he would be capable of working in some capacity. In addition, on examination today the claimant was able to think, speak and communicate clearly indicating cognitively he could work in some capacity.
>
> This information is based upon review of the medical records and independent medical examination performed.

{¶ 17} 8. Earlier, on March 15, 2014, at the request of Kent State, claimant was examined by psychologist Mark Querry, Ph.D., who examined only for the allowed psychological condition of the 2006 claim. In his seven-page narrative report, Dr. Querry opines:

> Overall, the percentage of whole person impairment based on the allowed psychological condition in this claim from a purely psychological point of view is 4 (four) %, far from being permanently and totally disabled from a psychological point of view.

{¶ 18} 9. On May 2, 2014, at the commission's request, claimant was examined by psychologist James M. Lyall, Ph.D. In his six-page narrative report, Dr. Lyall reviewed four functional areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, and pace, and (4) adaptation to stress.

> In his narrative report, under "Discussion," Dr. Lyall opined:
>
> Utilizing the AMA Guidelines for Impairment Due To Mental and Behavioral Disorders, Second and Fifth Edition we see mild impairment in all functional areas, due to the claimant's depressive symptoms. This, of course, takes into account some exaggeration seen on the SIMS profile. This mild impairment would fall at Class 2 and yield fifteen percent (15%) impairment due exclusively to the psychological condition to the whole body.

{¶ 19} 10. On a commission form captioned "Occupational Activity Assessment[,] Mental & Behavioral Examination," Dr. Lyall indicated by his mark that he agreed with the following pre-printed statement: "This Injured Worker is capable of work with the limitation(s) / modification(s) noted below."

{¶ 20} In the space provided, Dr. Lyall wrote in his own hand:

> The claimant's impairment is mild at 15% for his depression disorder. This level, in and of itself, would not inhibit a return to work. He should avoid hi[gh] stress, hi[gh] pace jobs.

{¶ 21} 11. On May 5, 2014, at the commission's request, claimant was examined by orthopedic surgeon Sheldon Kaffen, M.D. Dr. Kaffen examined for all the allowed physical conditions of both industrial claims.

{¶ 22} In his eight-page narrative report, Dr. Kaffen opines:

> It is my medical opinion based on the history, physical examination and review of the medical documentation that Mr. Daugintis is capable of sedentary work activity with the further limitations of no activities requiring any repetitive motion of the shoulders, lifting more than 5 pounds with either upper extremity, no use of the [sic] both shoulders above chest level.

{¶ 23} 12. On a "Physical Strength Rating" form dated May 5, 2014, Dr. Kaffen indicated by his mark that claimant is capable of "SEDENTARY WORK."

{¶ 24} 13. At claimant's request, vocational expert Mark A. Anderson prepared a five-page narrative report dated July 6, 2014. In his report, Anderson concluded "[t]here would be no transferable skills developed from any of his past work activities to the sedentary level of exertion." Anderson also noted that claimant had been "away from [the] competitive work force (6 years)." Anderson concluded:

> The Vocational Diagnosis and Assessment of Residual Employability confirms that Mr. Daugintis is not employable in the local, state or national economies. Based on his physical and emotional limitations and age, Mr. Daugintis is not a feasible candidate for vocational rehabilitation.

{¶ 25} 14. At Kent State's request, vocational expert Howard L. Caston, Ph.D., prepared a 15-page report dated July 8, 2014. In his report, Dr. Caston opines:

[A]fter an analysis of all of the available medical and vocational information that has been reviewed and identified in this report, it is my opinion based on a reasonable degree of vocational certainty that Mr. Daugintis is capable of engaging in employment. It is my opinion to a reasonable degree of vocational certainty that based on the effects of the allowed claim Mr. Daugintis is capable of performing jobs that include building maintenance and repair and other less strenuous jobs such as telemarketing, call center customer service representative, modified cashiering and other similar jobs within the functional capacities outlined by the independent examiners.

{¶ 26} 15. Following an October 20, 2014 hearing, an SHO mailed an order on October 28, 2014 denying the PTD application.

{¶ 27} The SHO's order of October 20, 2014 states reliance upon the reports of Drs. Gula, Querry, Lyall, and Caston. Following a lengthy discussion of each report, the SHO's order concludes with a discussion of the non-medical disability factors. In that regard, the SHO's order states:

Based on the fact that the Injured Worker cannot be deemed permanent and totally disabled based solely on the allowed physical and psychological conditions in this claim, a discussion of the Injured Worker's non-medical disability factors is in order.

The Hearing Officer finds that the Injured Worker's age is 61, which places him approximately four years from the normal retirement age of 65. The Hearing Officer finds that the Injured Worker's age is a neutral factor and him obtaining entry-level positions [sic].

The Hearing Officer further finds that the Injured Worker's education consisted of graduation from high school with no other schooling or training. The Injured Worker testified at hearing that he can read, write and do some math, and as far as his occupation is concerned, he worked in the maintenance departments at a hospital, for a pump company, and also worked in maintenance at the Kent State University.

The Hearing Officer finds that the Injured Worker did not supervise anyone at his jobs and that as indicated, he did not have any other occupations. The Hearing Officer finds that the Injured Worker's job duties are to be a negative factor in

> that he was involved in heavy duty maintenance work and that he did not have any clerical duties. Based on Dr. Caston's report, the Injured Worker has the opportunity to be in maintenance, facility maintenance technician, a maintenance supervisor, or an Outbound Call Center.
>
> Based on the medical documentation in file from Dr. Gula, examining the Injured Worker on the allowed physical conditions, the report of Mark Querry, Ph.D., and the report of James Lyall, Ph.D., examining the Injured Worker on the allowed psychological condition, including the Vocational Assessment report of Howard Caston, Ph.D., of 07/08/2014, that the Injured Worker's request for a finding of permanent and total disability, is DENIED, and the Injured Worker is not deemed permanently and totally disabled.

(Emphasis sic.)

{¶ 28} 16. On November 12, 2014, claimant moved for reconsideration of the SHO's order of October 20, 2014 based upon the commission's continuing jurisdiction under R.C. 4123.52.

{¶ 29} Among the grounds claimant articulated for reconsideration is the following:

> The SHO order also relies on the March 19, 2014 report of Dr. Gula to support the denial of the PTD application. Dr. Gula's report only considers the allowed conditions in the 2006 claim. The reliance in the SHO order of the March 19, 2014 report of Dr. Gula is not proper as that report does not address all of the allowed conditions.

{¶ 30} 17. On December 12, 2014, the commission mailed an interlocutory order, stating:

> The Injured Worker's Request for Reconsideration, filed 11/12/2014, from the Staff Hearing Officer order, issued 10/28/2014, is referred to the Commission Level Hearings Section to be docketed before the Members of the Industrial Commission. The issues to be heard are:
>
> 1. Issue:
>
> 1) Continuing Jurisdiction Pursuant To R.C. 4123.52
> 2) Permanent Total Disability

It is the finding of the Industrial Commission the Injured Worker has presented evidence of sufficient probative value to warrant adjudication of the request for Reconsideration regarding the alleged presence of a clear mistake of law of such character remedial action would clearly follow, and a clear mistake of fact in the order from which reconsideration is sought.

Specifically, it is alleged the Staff Hearing Officer denied permanent total disability compensation based on a medical report that does not consider the allowed conditions in all of the claims that are alleged to be causing disability.

The order issued is vacated, set aside, and held for naught.

Based on these findings, the Industrial Commission directs the Injured Worker's Request for Reconsideration, filed 11/12/2014, be set for hearing to determine whether the alleged clear mistake of law and/or fact as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.

In the interest of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue(s). The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under R.C. 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue(s).

{¶ 31} 18. Following a January 29, 2015 hearing, the three-member commission, one commissioner absent, issued an order finding that the SHO's order of October 20, 2014 (mailed October 28, 2014) contains a clear mistake of law and fact:

Specifically, the Staff Hearing Officer did not cite to evidence that considered the correct allowed conditions from both claims at issue. Rather, the Staff Hearing Officer relied exclusively upon the opinion of Douglas Gula, D.O., dated 03/19/2014, for the determination of the Injured Worker's residual physical capacities; yet, Dr. Gula did not accurately note and evaluate the allowed conditions in Claim Number 96-417416. Therefore, the Industrial Commission exercises continuing jurisdiction pursuant to R.C. 4123.52.

{¶ 32} The commission then conducted a de novo review.  Vacating the SHO's order mailed October 28, 2014 and awarding PTD compensation, the commission explained:

> It is the order of the Commission that the IC-2, Application for Compensation for Permanent Total Disability, filed 01/28/2014, is granted. The Commission finds the allowed conditions, when considered in combination with nonmedical disability factors, render the Injured Worker permanently and totally disabled.
>
> This decision is supported by the reports from Raymond Richetta, Ph.D., dated 07/31/2013, and Sheldon Kaffen, M.D., dated 05/15/2014. Dr. Richetta opined that psychological condition renders the Injured Worker permanently and totally disabled while Dr. Kaffen opined the physical conditions, from both claims, restrict the Injured Worker to sedentary work with further restrictions against any repetitive motion of the shoulders, lifting more than five pounds with either upper extremity, and no use of the shoulders above chest level.
>
> The Injured Worker is 61 years old and a high school graduate with work experience as an HVAC servicer, pump repair shop manager, and maintenance worker. The commission finds persuasive the opinion of Mark Anderson, M.S., C.D.M.S., L.P.C., dated 07/06/2014, who concluded the Injured Worker has no transferable skills from his previous work experience and is vocationally limited by his advancing age, lack of clerical aptitude, and time away from the competitive work force. The Commission further relies upon the rehabilitation closure reports dated 01/18/2000 and 05/02/2013. After participating in job search services, the initial rehabilitation program ended because of medical instability. More recently, the Injured Worker was deemed not feasible for services based upon the conclusion from Gail Klier, M.Ed., C.R.C., C.C.M., dated 04/19/2013, opining the Injured Worker's prognosis for a return to work is poor.
>
> Permanent total disability compensation shall begin on 07/31/2013, based upon the report of Dr. Richetta of that date, which supports the award [of] compensation.

{¶ 33} 19.  On April 16, 2015, relator, Kent State University, filed this mandamus action.

Conclusions of Law:

{¶ 34} The issue is whether the commission abused its discretion in exercising continuing jurisdiction to vacate the SHO's order of October 20, 2014 that denied the PTD application.

{¶ 35} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 36} Continuing jurisdiction is not unlimited. Its prerequisites are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998); *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14.

{¶ 37} Ohio Adm.Code 4121-3-34 sets forth the commission's rules regarding the adjudication of PTD applications.

{¶ 38} Ohio Adm.Code 4121-3-34(C) is captioned "Processing of applications for permanent total disability." Thereunder, Ohio Adm.Code 4121-3-34(C) currently provides:

> (1) Each application for permanent total disability shall identify, if already on file, or be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent total disability compensation. * * * The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the injured worker's physical and/or mental limitations resulting from the allowed conditions in the claim(s). * * * If an application for permanent total disability compensation is filed that does not meet the filing requirements of this rule, or if proper medical evidence is not identified within the claim file, the application shall be dismissed without hearing. Where it is determined at the time the application for permanent total disability compensation is filed that the claim file contains the required medical evidence, the application for permanent total disability compensation shall be adjudicated on its merits as provided in this rule absent withdrawal of the application for permanent total disability compensation.
>
> * * *

(4)

(a) The injured worker shall ensure that copies of medical records, information, and reports that the injured worker intends to introduce and rely on that are relevant to the adjudication of the application for permanent total disability compensation from physicians who treated or consulted the injured worker that may or may not have been previously filed in the workers' compensation claim files, are contained within the file at the time of filing an application for permanent total disability.

* * *

(5)

(a) Following the date of filing of the permanent and total disability application, the claims examiner shall perform the following activities:

(i) Obtain all the claim files identified by the [injured worker] on the permanent total disability application and any additional claim files involving the same body part(s) as those claims identified on the permanent total disability application.

(ii) Copy all relevant documents as deemed pertinent by the commission including evidence provided under paragraphs (C)(1) and (C)(4) of this rule and submit the same to an examining physician to be selected by the claims examiner.

{¶ 39} Ohio Adm.Code 4121-3-34(D) is captioned "Guidelines for adjudication of applications for permanent total disability."

Thereunder, Ohio Adm.Code 4121-3-34(D)(2) currently provides:

(a) If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.

(b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.

The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed.

{¶ 40} The Supreme Court of Ohio has repeatedly held that, in determining whether a claimant is permanently and totally disabled, the commission must consider all the allowed conditions. *State ex rel. Johnson v. Indus. Comm.*, 40 Ohio St.3d 339 (1988). (The claimant's PTD application was supported by a report from psychiatrist, G.M. Sastry, who found claimant to be permanently totally disabled. The commission exclusively relied upon a report from Dr. Colquitt, who evaluated only the physical conditions.) *State ex rel. Cupp v. Indus. Comm.*, 58 Ohio St.3d 129 (1991). (The "numerous serious conditions" additionally allowed in the claim were not mentioned in the commission's order nor evaluated by Dr. McCloud upon whom the commission exclusively relied.) *State ex rel. Didiano v. Beshara*, 72 Ohio St.3d 255 (1995). (Claimant's "serious psychiatric condition," major depression, was not evaluated by the two doctors' reports upon whom the commission relied.) *State ex rel. Roy v. Indus. Comm.*, 74 Ohio St.3d 259 (1996). (Following the PTD hearing, claimant moved to amend his claim to include a psychiatric condition. The commission added the psychiatric claim allowance, but failed to consider it when it denied reconsideration.)

{¶ 41} In *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276 (1993), the commission failed to list "dysthymic disorder" as an allowed condition in its order denying PTD compensation. The *Zollner* court stated:

Claimant's first assertion is grounded in the omission of "dysthymic disorder" from the enumerated conditions in the permanent total disability order. Relying on *State ex rel. Johnson v. Indus. Comm.* (1988), 40 Ohio St.3d 339, * * * claimant contends that the omission constitutes an abuse of

> discretion. *Johnson,* however, is distinguishable. There, as here, the commission's order did not list an allowed psychiatric condition among the allowed conditions. However, in *Johnson,* the evidence upon which the commission relied to deny permanent total disability related solely to the claimant's physical condition. These two factors led us to question whether the commission indeed considered all allowed conditions. The order was accordingly returned for clarification.

*Id.* at 277-78.

{¶ 42} In reviewing the SHO's order of October 20, 2014 that was vacated by the commission, it can again be observed that the order states reliance upon the reports of Drs. Gula, Querry, Lyall, and Caston.

{¶ 43} At the request of Kent State, Dr. Gula examined only for the allowed physical conditions of the 2006 claim.  Based solely on his examination of the physical conditions of the 2006 claim, Dr. Gula opined that claimant "is not permanently and totally disabled as he would be capable of working in some capacity."  Dr. Gula never opined as to the specific capacity that claimant would be able to work.

{¶ 44} At the request of Kent State, Dr. Querry examined for the psychological condition allowed in the 2006 claim.  Dr. Querry opined that the allowed psychological condition of the 2006 claim did not permanently and totally disable the claimant.  Dr. Querry rated the psychological impairment to be four percent.

{¶ 45} At the commission's request, Dr. Lyall examined for the allowed psychological condition of the 2006 claim.  Dr. Lyall found mild impairment at 15 percent.  He further opined that the psychological condition:  "would not inhibit a return to work."  However, claimant "should avoid hi[gh] stress, hi[gh] pace jobs."

{¶ 46} At the request of Kent State, Caston prepared a vocational report in which he opined that claimant "is capable of engaging in employment."

{¶ 47} Ohio Adm.Code 4121-3-34(B) provides for definitions related to the commission's rules for the adjudication of PTD applications.  Thereunder, at Ohio Adm.Code 4121-3-34(B)(4), the rule provides:

> "Residual functional capacity" means the maximum degree to which the injured worker has the capacity for sustained

performance of the physical-mental requirements of jobs as
these relate to the allowed conditions in the claim(s).

{¶ 48} Only the reports of Drs. Gula, Querry, and Lyall relate to residual functional capacity. The Caston report does not. Dr. Caston is not a physician who is qualified to render a medical opinion as to residual functional capacity.

{¶ 49} Given the three reports relating to residual functional capacity, we have no relied upon report that addresses the allowed conditions of the 1996 claim. Again, Dr. Gula confined his examination solely to the allowed physical conditions of the 2006 claim.

{¶ 50} Given that the SHO failed to rely upon a medical report that addresses the allowed conditions of the 1996 claim, we have a clear mistake of law. On that basis, the three-member commission had continuing jurisdiction to vacate the SHO's order which was a final order not subject to an administrative appeal.

{¶ 51} Here, relator argues that the SHO was not required to consider the allowed conditions of the 1996 claim because claimant failed to submit medical evidence with his PTD application that supports a finding that one or more of the allowed conditions of the 1996 claim cause impairment. Thus, relator concludes that the SHO was justified in relying solely upon the report of Dr. Gula for the allowed physical conditions to be considered. Relator cites no authority to support its argument.

{¶ 52} In fact, relator's argument is even broader. Apparently, it is relator's position that only the psychological condition in the 2006 claim must be considered because claimant only submitted a report from a psychologist in support of his PTD application. That is, because claimant only submitted the report of Dr. Richetta in support of his PTD application, relator argues that none of the physical injuries of either claim need be considered by the adjudicator.

{¶ 53} As relator puts it:

A review of the evidence submitted establishes that Claimant's sole basis for PTD benefits is actually limited to the psychological component of the 2006 Claim involving Kent.

Claimant only submitted evidence that he is PTD based on the psychological condition associated with the 2006 Claim. There was no evidence submitted by Claimant that he is PTD

> based on his physical injuries, whether from the 1996 Claim or the 2006 Claim. Only the 2006 Claim is allowed for a psychological condition. As such, the 2006 Claim can be the only basis for awarding PTD benefits.

(Relator's Brief, 13.)

{¶ 54} Absent from relator's argument is an analysis of Ohio Adm.Code 4121-3-34(C) regarding the processing of PTD applications.

{¶ 55} While Ohio Adm.Code 4121-3-34(C)(1) provides that an application can be dismissed if it is filed without the required medical evidence, nowhere is it even suggested that the PTD applicant has the duty or burden to submit medical evidence as to each of the allowed conditions of his industrial claims in order to obtain commission consideration of all the allowed conditions of his industrial claims.

{¶ 56} Moreover, Ohio Adm.Code 4121-3-34(C)(5) commands that the claims examiner obtain "all the claim files identified by the injured worker on the permanent total disability application and any additional claim files involving the same body part(s) as those claims identified on the permanent total disability application." Thus, the rule requires the claims examiner to obtain files that the applicant may have failed to identify on the application.

{¶ 57} Here, on his PTD application, claimant appropriately listed the claim numbers of both claims in response to the request on the PTD application form.

{¶ 58} Clearly, the SHO had the duty to consider all the allowed conditions of both industrial claims. Because he did not do so, the exercise of continuing jurisdiction over his order was appropriate.

{¶ 59} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**