[Cite as *State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-1137.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Paul Prinkey, Jr., | : | |
| Relator, | : | No. 22AP-264 |
| v. | : | (REGULAR CALENDAR) |
| Emerine's Towing, Inc. et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 26, 2024

**On brief:** *Schiavoni, Schiavoni, Bush & Muldowney*, and *Shawn R. Muldowney*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Corea*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Paul Prinkey, Jr., initiated this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to amend its order finding it had no jurisdiction to address Prinkey's second application for permanent total disability ("PTD") compensation under R.C. 4123.58(G), and to issue a new order finding Prinkey is entitled to PTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined the commission failed to explain the basis for its determination that Prinkey did not demonstrate new and changed circumstances. Thus, the magistrate recommends

this court issue a limited writ of mandamus returning the matter to the commission to issue a new order: (1) specifically stating the evidence the commission relied upon in reaching its decision, and (2) briefly explaining the reasoning for the commission's decision.

{¶ 3} The commission filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). The commission does not challenge the magistrate's recitation of the pertinent facts; however, the commission objects to the magistrate's conclusion that Prinkey is entitled to a limited writ of mandamus. More specifically, the commission sets forth the following objections:

> [1.] The magistrate erred in finding that the commission applied R.C. 4123.58(G) retroactively.
>
> [2.] The magistrate erred in finding that the commission did not adequately cite to the evidence relied upon or adequately explain the reasoning for its decision.

{¶ 4} A brief summary of the factual circumstances is pertinent to our discussion. As set forth more fully in the magistrate's decision, Prinkey sustained a work-related injury in January 2015, and his workers' compensation claim was allowed for the conditions of: (1) myocardial infarction and substantial aggravation of pre-existing coronary artery disease ("allowed cardiac condition"), and (2) major depressive disorder, single episode ("allowed psychological condition"). Prinkey filed his first application for PTD compensation on February 4, 2019, relying on the reports of Dr. Randall J. Hartwig and Dr. Lynn Ross DiMarzio, both of whom opined Prinkey was permanently and totally disabled from any sustained, remunerative employment. In denying Prinkey's first application for PTD compensation, however, the commission relied on the reports of two other examining healthcare providers, Dr. Gary Greenspan and Dr. Lynn A. Luna Jones, both of whom concluded Prinkey was capable of working. Specifically, Dr. Greenspan found a whole person impairment of 30 percent due to the allowed cardiac condition but found Prinkey was capable of sedentary work. Dr. Jones found a 3 percent whole person impairment due to the allowed psychological condition and, considering only that condition, concluded Prinkey was capable of working.

{¶ 5}   Prinkey then filed a second application for PTD compensation on June 4, 2021, supporting his application with new reports from Dr. DiMarzio and Dr. Hartwig, both of whom again opined Prinkey was permanently and totally disabled from all forms of sustained, remunerative employment.  Two other healthcare providers then examined Prinkey for purposes of his second application for PTD compensation.  Dr. Joseph P. Percorelli found that Prinkey's allowed psychological condition alone resulted in a 35 percent whole person impairment and would prevent Prinkey from returning to gainful employment.  Additionally, Dr. Boris Gliner found Prinkey's symptoms related to the allowed cardiac condition to be unchanged and found that Prinkey had a whole person impairment of 30 percent due to that allowed condition but that Prinkey was capable of sedentary work.  In a November 12, 2021 order, the commission found it lacked jurisdiction to consider Prinkey's second application for PTD compensation because Prinkey failed to present evidence of new and changed circumstances as required by R.C. 4123.58(G).  Prinkey filed a request for reconsideration, and the commission again determined it did not have jurisdiction to consider Prinkey's second application for PTD compensation.  This instant mandamus action followed.

{¶ 6}   To be entitled to a writ of mandamus, Prinkey must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).  A clear legal right to a writ of mandamus exists where the relator shows the commission abused its discretion by entering an order which is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986).  But when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).

{¶ 7}   In its first objection to the magistrate's decision, the commission argues the magistrate erred in finding the commission applied R.C. 4123.58(G) retroactively to Prinkey's claim which was already pending when R.C. 4123.58(G) went into effect. Because the amendment to the PTD statute would not render any fully adjudicated claims invalid, and because Prinkey's claim was merely pending but not fully adjudicated when

the statute went into effect, the commission asserts there is no need to consider whether R.C. 4123.58(G) is unconstitutionally retroactive.

{¶ 8}   As the magistrate more fully explained, a court considering whether a statute is unconstitutionally retroactive applies a two-part test "asking (1) whether the General Assembly expressly made the statute retroactive and, if so, (2) whether the statute is substantive or remedial." *State v. Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, ¶ 14, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 8. " 'It is well established that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right.' " *Williams* at ¶ 9, quoting *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 37. " 'Remedial laws, however, are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right.' " *Id.*, quoting *Pratte* at ¶ 37. Here, the commission does not object to the magistrate's determination that R.C. 4123.58(G) is remedial rather than substantive. Instead, the commission's objection relates to the first prong of the test for constitutional retroactivity and disagrees with the magistrate's determination that the General Assembly expressly made R.C. 4123.58(G) retroactive.

{¶ 9}   Amended effective September 28, 2021, R.C. 4123.58(G) provides:

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

The commission notes there is nothing in the language of R.C. 4123.58(G) expressly making its application retroactive. However, in finding R.C. 4123.58(G) to be expressly retroactive, the magistrate looked to the enacting language of 2021 Am.Sub.H.B. No. 75 ("H.B. 75") and determined from that language the General Assembly expressed a clear intent to make R.C. 4123.58(G) apply retroactively. In pertinent part, H.B. 75 provides

"[s]ections 4123.57 and 4123.58 of the Revised Code, as amended by this act, apply to claims pending on or arising after the effective date of this section." The commission acknowledges this enacting language but nonetheless argues the magistrate erred in finding R.C. 4123.58(G) to be expressly retroactive.

{¶ 10} The commission relies on *State ex rel. Hamilton v. Indus. Comm.*, 10th Dist. No. 19AP-510, 2021-Ohio-1824, for its position that R.C. 4123.58(G) cannot be considered to be expressly retroactive because the enacting language of R.C. 4123.58(G) contained in H.B. 75 is nearly identical to the enacting language of R.C. 4123.56(F), the statute at issue in *Hamilton*, contained in 2019 Am.Sub.H.B. No. 81 ("H.B. 81"). *Compare* H.B. 75 ("[s]ections 4123.57 and 4123.58 of the Revised Code, as amended by this act, apply to claims pending on or arising after the effective date of this section") and H.B. 81 ("[t]he amendments made to sections 4123.56, 4123.58, and 4123.65 of the Revised Code by this act apply to claims pending on or arising after the effective date of this section"). Because this court in *Hamilton* determined R.C. 4123.56(F) was not made expressly retroactive, the commission asserts we must similarly conclude R.C. 4123.58(G) is not expressly retroactive. *Hamilton* at ¶ 28 (in considering the two-part test for constitutional retroactivity, the court concluded "that the first factor is not met in the present case because the legislature did not clearly express an intent for the new language of R.C. 4123.56(F) to apply retroactively").

{¶ 11} Though the commission is correct that the language in H.B. 75 mirrors the language in H.B. 81, we note that this court in *Hamilton* never considered the interplay between the enacting language from H.B. 81 with the statutory text of R.C. 4123.56(F). As no party called the enacting language of H.B. 81 to the attention of the court, this court looked only to the statutory text of R.C. 4123.56(F). By contrast, the magistrate in the instant case considered R.C. 4123.58(G) in the full context of the enacting language of H.B. 75. Accordingly, we do not agree with the commission that we are bound by this court's holding in *Hamilton*. Instead, we agree with the magistrate's conclusion that, through the enacting language contained in H.B. 75, the legislature expressed a clear intent for R.C. 4123.58(G) to apply retroactively. Accordingly, we overrule the commission's first objection to the magistrate's decision.

{¶ 12} In its second objection to the magistrate's decision, the commission argues the magistrate erred in finding the commission did not adequately cite to the evidence it relied upon or adequately explain the reasoning for its decision that Prinkey had not presented sufficient evidence of new or changed circumstances. The Supreme Court of Ohio has repeatedly held that "[i]n an order granting or denying benefits to a claimant, the commission must 'specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.' " *State ex rel. Merritt v. Indus. Comm.*, 161 Ohio St.3d 180, 2020-Ohio-4379, ¶ 3, quoting *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), syllabus; and *State ex rel. Mitchell v. Robbins & Myers*, *Inc.*, 6 Ohio St.3d 481, 483-84 (1983) (the commission "must specifically state which evidence and only that evidence which has been relied upon to reach [its] conclusion, and a brief explanation stating why the claimant is or is not entitled to the benefits requested"). Where the commission fails to comply with *Noll*, the commission has abused its discretion. *Merritt* at ¶ 3, citing *State ex rel. Gemind v. Indus. Comm.*, 82 Ohio St.3d 457, 460 (1998).

{¶ 13} Although the commission stated it had reviewed the prior staff hearing officer ("SHO") order denying the first application for PTD compensation and the entirety of the claim file, it made only a conclusory statement that "there is insufficient evidence of new and changed circumstances * * * to permit the [commission] to consider this subsequent application." (Nov. 12, 2021 SHO Order at 1.) The commission argues it was not required to explain why it did not find sufficient evidence of new and changed circumstances because it cannot be required to cite to something that does not exist. We disagree. The Supreme Court is clear that even where the commission concludes a claimant is not entitled to the requested benefits, the commission must still briefly explain why it reached that conclusion. *State ex rel. Cline v. Abke Trucking*, *Inc.*, 137 Ohio St.3d 557, 2013-Ohio-5159, ¶ 14, 18 (finding the commission's order violates *Noll* where "[t]he commission failed to specifically state the evidence relied upon or explain the reasoning behind its decision that [the claimant] had voluntarily abandoned his employment * * * thus making him ineligible for temporary-total-disability compensation," specifically explaining "[t]he hearing officer did not identify the evidence relied upon but merely concluded that as a result of the termination, [the claimant] was barred from receiving compensation for temporary total disability"); *Merritt* at ¶ 5-6 (although the commission

stated "[a]ll evidence on file has been reviewed and considered in making this finding," the commission's order nonetheless failed to comply with *Noll* "[b]ecause the order does not specifically state what evidence the staff hearing officer relied on to reach the conclusion that [the claimant] was terminated for violating his employer's drug-free-workplace policy, thereby voluntarily abandoning his employment"). In other words, the conclusion, itself, does not constitute the explanation required by *Noll* and its progeny. Thus, we agree with the magistrate that the commission abused its discretion in failing to briefly explain the reasons for its decision that Prinkey had not demonstrated new and changed circumstances. *State ex rel. Campbell v. Conrad*, 10th Dist. No. 01AP-1158, 2002-Ohio-2773, ¶ 47 (the commission's order was "a clear violation of *Noll*" where "the [district hearing officer] found that no new and changed circumstances were established, but he failed to provide any reasoning for this finding that connects to the evidence of record").

{¶ 14} Despite the perfunctory, conclusory language in the commission's decision and the lack of explanation of the basis for its decision, the commission argues we should nonetheless deny the requested writ because the evidence in the file does not demonstrate new and changed circumstances. *See State ex rel. Ross v. Indus. Comm.*, 118 Ohio St.3d 73, 2008-Ohio-1739, ¶ 17-18 ("the mere submission of new evidence is not automatically a new and changed circumstance," and simply submitting reports of a doctor who disagreed with the opinion of the doctor in a prior application is not enough to show new and changed circumstances; instead, the evidence must show an exacerbation of the condition or the allowance of a new condition), citing *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991), and *State ex rel. Poneris v. Indus. Comm.*, 111 Ohio St.3d 264, 2006-Ohio-5702. Through this argument, the commission essentially asks us to weigh the evidence before the commission, but such is not the role of this court. *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, ¶ 20 ("[t]he commission is the exclusive fact-finder with sole responsibility to evaluate the weight and credibility of the evidence").

{¶ 15} Accordingly, because we agree with the magistrate that the commission abused its discretion in failing to briefly explain the reasons for its decision finding no new and changed circumstances, we overrule the commission's second objection to the magistrate's decision. We note that nothing in this decision should be construed as

requiring the commission to discuss or rely on any *specific* piece of evidence in the record; instead, we reiterate that the commission must provide a brief explanation for its decision. *See State ex rel. Digiacinto v. Indus. Comm.*, 159 Ohio St.3d 346, 2020-Ohio-707, ¶ 15 (while "[t]he commission is required to *consider* all of the evidence that is properly before it, * * * the commission is not required to list in its order each piece of evidence that it has considered," but instead "the commission's order need list only the evidence that the commission *relied* on in reaching its conclusion") (Emphasis sic.), citing *State ex rel. Buttolph v. Gen. Motors Corp., Terex Div.*, 79 Ohio St.3d 73, 77 (1997), and *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, ¶ 14. Thus, we agree with the magistrate that the appropriate remedy in this case is to grant a limited writ of mandamus ordering the commission to (1) specifically state the evidence the commission relied on in reaching its decision, and (2) briefly explain the reasoning for its decision. *See Cline* at ¶ 18; *Merritt* at ¶ 6.

{¶ 16} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate did not err in determining Prinkey is entitled to a limited writ of mandamus. Accordingly, we adopt the magistrate's findings of fact and conclusions of law and overrule the commission's objections to the magistrate's decision. We grant Prinkey's request for a limited writ of mandamus, and we remand this matter to the commission for further proceedings in accordance with law and this decision.

*Objections overruled*;
*limited writ of mandamus granted*;
*cause remanded.*

DORRIAN and LELAND, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Paul Prinkey, Jr., | : | |
| Relator, | : | |
| v. | : | No. 22AP-264 |
| Emerine's Towing, Inc. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 18, 2023

*Schiavoni, Schiavoni, Bush & Muldowney,* and *Shawn R. Muldowney,* for relator.

*Dave Yost,* Attorney General, and *Denise A. Corea,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

**{¶ 17}** Relator, Paul Prinkey, Jr., seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to amend its order finding that it had no jurisdiction to address relator's second application for permanent total disability ("PTD") compensation under R.C. 4123.58(G), and to issue a new order finding relator is entitled to PTD.

**I. Findings of Fact:**

**{¶ 18}** 1. Relator suffered an injury on January 19, 2015 in the course of and arising out of his employment with respondent Emerine's Towing, Inc. ("Emerine's Towing").

{¶ 19} 2. Relator's claim was allowed for the conditions of (1) myocardial infarction and substantial aggravation of preexisting coronary artery disease; and (2) major depressive disorder, single episode.

{¶ 20} 3. For purposes of evaluating PTD, relator was examined by two healthcare providers prior to filing his first PTD application. Relator was first examined by Randall J. Hartwig, D.O., on November 30, 2018. Dr. Hartwig submitted a report dated December 4, 2018, in which he opined that relator was permanently and totally disabled from any and all sustained, gainful, and remunerative employment as a result of the allowed conditions in the claim.

{¶ 21} 4. Relator was examined by Lynn Ross DiMarzio, Ph.D., on March 1, 2017. On December 6, 2018, Dr. DiMarzio again examined relator for purposes of determining whether his psychiatric condition was permanent and whether relator was permanently and totally disabled from any and all gainful forms of employment as a result of such condition. Dr. DiMarzio found that relator's allowed condition of major depressive disorder, single episode constituted approximately 25 percent disability due to the psychiatric condition alone. Dr. DiMarzio found that relator was permanently and totally disabled from any and all forms of remunerative employment, noting that relator's psychiatric condition was directly related to relator's approved physical conditions, and recommended that relator continue with psychological counseling and psychiatric medication management.

{¶ 22} 5. Relator filed his first application for PTD on February 4, 2019.

{¶ 23} 6. Following his PTD application, relator was first examined by Gary A. Greenspan, M.D., on October 18, 2019. In a report dated October 29, 2019, Dr. Greenspan found that relator had a whole person impairment of 30 percent due to the allowed condition of myocardial infarction and substantial aggravation of pre-existing coronary artery disease. Dr. Greenspan opined that relator was capable of sedentary work exerting up to ten pounds of force occasionally.

{¶ 24} 7. Relator was next examined by Lynn A. Luna Jones, Ph.D., on October 25, 2019. In a report dated October 31, 2019, Dr. Jones found that relator appeared to be at maximum medical improvement ("MMI") and was "functioning fairly well from a psychological standpoint." (Stip. at 32.) Dr. Jones opined that relator had a three percent

whole person impairment due to the allowed psychological condition of major depressive disorder, single episode. Considering only that allowed psychological condition, Dr. Jones concluded that relator would be capable of working.

{¶ 25} 8. On November 25, 2019, relator was examined by Shannon C. Valentine, MRC, CRC, a vocational specialist. Valentine opined that relator would not be capable of engaging in any sustained, remunerative employment.

{¶ 26} 9. Relator's first application for PTD was heard by a commission staff hearing officer ("SHO") on January 14, 2020. Denying the application for PTD in an order mailed on January 18, 2020, the SHO, relying on the reports of Drs. Greenspan and Jones, found that relator was not precluded from engaging in sustained remunerative employment and was therefore not permanently and totally disabled.

{¶ 27} 10. Following the denial of his first PTD application, relator was examined by two healthcare providers prior to filing his second PTD application. On September 30, 2020, Dr. DiMarzio conducted another evaluation of relator including a mental status examination, clinical interview, and psychological testing. In a report dated November 9, 2020, Dr. DiMarzio again found that relator had a disability of approximately 30 percent based solely on relator's allowed psychiatric condition of major depressive disorder, single episode. Dr. DiMarzio again concluded that relator was permanently and totally disabled from any and all forms of remunerative employment.

{¶ 28} 11. Relator was again examined by Dr. Hartwig on May 20, 2021. In a report dated May 22, 2021, Dr. Hartwig opined that relator was permanently and totally disabled from any and all sustained, gainful, and remunerative employment as a result of the allowed conditions in the claim.

{¶ 29} 12. Relator filed a second application for PTD on June 4, 2021.

{¶ 30} 13. Following his second application, relator was examined by Joseph P. Pecorelli, Ph.D., on August 17, 2021. In a report dated August 27, 2021, Dr. Pecorelli concluded that relator's allowed psychological condition of major depressive disorder, single episode had reached MMI. Dr. Pecorelli found that the allowed psychological condition alone resulted in a 35 percent whole person impairment and would interfere with and prevent relator from returning to gainful employment.

{¶ 31} 14. Relator was next examined by Boris Gliner, M.D., on August 23, 2021. In a report dated August 26, 2021, Dr. Gliner reported that according to relator, his "symptoms overall are unchanged."(Stip. at 59.) Regarding whether relator had reached MMI with regard to the allowed conditions, Dr. Gliner opined as follows:

> The injured worker sustained a myocardial infarction on January 19th, 2015, and underwent quadruple bypass on January 20th, 2015. He is not experiencing chest pain or shortness of breath. He is not scheduled for any tests or procedures. His medical therapy is unchanged. In my opinion, based on the history and physical examination and review of the file provided to me, the injured worker has reached maximal medical improvement with regard to allowed condition of myocardial infarction and substantial aggravation of pre-existing coronary artery disease. No fundamental functional or physiological change can be expected within reasonable probability in spite of continued medical or rehabilitative procedures of his condition.

(Stip. at 60.) Dr. Gliner found that relator had a whole person impairment of 30 percent due to the allowed condition of myocardial infarction and substantial aggravation of preexisting coronary artery disease. Dr. Gliner opined that relator was capable of sedentary work exerting up to ten pounds of force occasionally.

{¶ 32} 15. Relator's second application for PTD was heard by a commission SHO on November 9, 2021. In an order dated November 12, 2021, the SHO found the commission lacked jurisdiction to consider relator's second PTD application because relator failed to present evidence of new and changed circumstances as required by R.C. 4123.58(G). Noting the denial of relator's first PTD application on January 18, 2020, the SHO found that "there is insufficient evidence of new and changed circumstances, prior to the 06/04/2021 filing of this Application for Permanent Total Disability Compensation to permit the Industrial Commission to consider this subsequent Application." (Stip. at 79.) The SHO stated the decision was based on a review of the January 18, 2020 SHO order and a review of the claim file.

{¶ 33} 16. On November 17, 2021, relator filed a request for reconsideration of the SHO's November 12, 2021 order.

{¶ 34} 17. The commission determined that it did not have continuing jurisdiction and stated that the November 12, 2021 SHO order remained in full force and effect.

## II. Discussion and Conclusions of Law

{¶ 35} Relator seeks a writ of mandamus ordering the commission to award him PTD compensation. Two questions are presented in this mandamus action: (1) whether R.C. 4123.58(G) is unconstitutionally retroactive; and (2) if R.C. 4123.58(G) is not unconstitutionally retroactive, whether the SHO erred in concluding relator failed to meet his burden under the statute of presenting evidence of new and changed circumstances to enable the commission to consider the application.

## A. Requirements for Mandamus

{¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). With regard to factual determinations, where the commission's determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996). Questions of law are reviewed de novo. *State ex rel. Autozone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 16. *See State v. Leyh*, 166 Ohio St.3d 365, 2022-Ohio-292, ¶ 14; *Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, ¶ 10.

## B. Permanent Total Disability under Workers' Compensation System

{¶ 37} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Ohio Adm.Code 4121-3-34(B)(1).

{¶ 38} R.C. 4123.58 governs compensation for PTD, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;
>
> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C). PTD compensation is prohibited when the reason the applicant is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:

> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;
>
> (2) Solely the employee's age or aging;
>
> (3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.
>
> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

{¶ 39} R.C. 4123.58 was amended by 2021 Am.Sub.H.B. No. 75 ("H.B. 75"), which in part added R.C. 4123.58(G).[1] Effective September 28, 2021, the statute provides:

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

---

[1] Following the amendments to R.C. 4123.58 enacted in H.B. 75, R.C. 4123.58 was amended by the 134th General Assembly a second time in Am.Sub.H.B. No. 281 ("H.B. 281"). H.B. 281, which became effective April 6, 2023, made a minor change to R.C. 4123.58(F) by striking through and thereby deleting the word "handicapped," which immediately preceded "individuals," and inserting the word "with disabilities" after the aforementioned "individuals." However, the remaining text of R.C. 4123.58 in H.B. 281 did not include the text of R.C. 4123.58(G). H.B. 281 gave no specific indication that it intended to amend R.C. 4123.58 by removing R.C. 4123.58(G) through the usual means of striking through the existing text of R.C. 4123.58(G). *See* Ohio Adm.Code 103-5-01 ("Old matter that is to be omitted from an existing codified or uncodified section is indicated by retaining the matter as it appears in the section and striking it through with a horizontal line."). Section 2 of H.B. 281 provided in pertinent part: "That existing sections * * * 4123.58 * * * of the Revised Code are hereby repealed." *See State v. Wilson*, 77 Ohio St.3d 334, 337 (1997) (stating in considering the effect of a former version of R.C. 151.52 that "[m]atter to be affected by an 'existing sections' repeal must appear in the body of the enrolled Act and must be stricken through").

The Legislative Service Commission includes the text of R.C. 4123.58(G) in its official online version of the Revised Code. The following note from the Legislative Service Commission appears after the text of R.C. 4123.58 on its website: "The Legislative Service Commission presents the text of this section as a composite of the section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation." Legislative Service Commission, *Section 4123.58*, https://codes.ohio.gov/ohio-revised-code/section-4123.58 (accessed August 8, 2023).

The provision in R.C. 1.52 noted by the Legislative Service Commission provides:

> If amendments to the same statute are enacted at the same or different sessions of the legislature, one amendment without reference to another, the amendments are to be harmonized, if possible, so that effect may be given to each. If the amendments are substantively irreconcilable, the latest in date of enactment prevails. The fact that a later amendment restates language deleted by an earlier amendment, or fails to include language inserted by an earlier amendment, does not of itself make the amendments irreconcilable. Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation.

R.C. 1.52(B). *See State v. McCullough*, 9th Dist. No. 28917, 2018-Ohio-4499, ¶ 11-12; *Wilson* at 337.

The magistrate infers the absence of R.C. 4123.58(G) from H.B. 281 may have occurred because H.B. 281 was initially passed by the House on June 16, 2021, which was before the effective date of H.B. 75. Regardless, in the instant matter, no party contends that R.C. 4123.58(G) was not in effect at the time of the SHO's order denying relator's second application for PTD in this matter. As a result, it is not necessary at this time to resolve the impact, if any, of H.B. 281 to R.C. 4123.58(G).

R.C. 4123.58(G).

{¶ 40} Ohio Adm.Code 4121-3-34 governs the processing and adjudication of applications for PTD. The applicant bears the burden to prove permanent total disability by establishing under a preponderance of the evidence that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121-3-34(D)(3)(a). *See State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 16; *State ex rel. LTV Steel Co. v. Indus. Comm.*, 65 Ohio St.3d 22, 23 (1992). The application must "identify, if already on file, or be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition(s), that supports an application for compensation for permanent total disability." Ohio Adm.Code 4121-3-34(C)(1). *See State ex rel. Kent State Univ. v. Indus. Comm.*, 10th Dist. No. 15AP-416, 2016-Ohio-1032 (stating that under Ohio Adm.Code 4121-3-34(C)(1) an application can be dismissed if it is filed without the required medical evidence).

{¶ 41} The relevant inquiry in PTD cases is whether the applicant engages in or is medically capable of sustained remunerative employment. *Seibert*, 2019-Ohio-3341, at ¶ 18, citing *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 16; *State ex rel. Franta v. Indus. Comm. of Ohio*, 10th Dist. No. 19AP-530, 2021-Ohio-1501, ¶ 6. The term "sustained" has not been precisely defined for workers' compensation purposes. In order to be considered sustained, remunerative activity does not have to occur on a regular or daily basis, but "any 'ongoing pattern' of activity can be categorized as sustained activity." *State ex rel. McNea v. Indus. Comm.*, 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 13, quoting *Schultz*, 2002-Ohio-3316, at ¶ 63. The Supreme Court of Ohio has held that "part-time work constitutes sustained remunerative employment." *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d 360, 362 (1997). Importantly, however, there is no bright-line numerical analysis for determining whether part-time work meets the qualifications for sustained remunerative employment in PTD cases. *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 20 (stating that "there is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis," but rather the "commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis").

{¶ 42} "Entitlement to permanent total disability compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative employment." *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 455 (1993), quoting *LTV Steel Co.*, 65 Ohio St.3d at 24. Nonmedical factors include the "claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record." *Stephenson*, 31 Ohio St.3d at 173. "[A] claimant's medical capacity to work is not dispositive if the claimant's age, experience, education, etc., foreclose the claimant's employability." *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 321 (1994). *See State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 23, quoting *State ex rel. Galion Mfg. Div., Dresser Indus., Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991) ("While the commission may not deny PTD compensation without considering nonmedical factors, it may grant PTD compensation without considering nonmedical factors when 'medical factors alone preclude sustained remunerative employment.' ").

## C. Whether R.C. 4123.58(G) Is Unconstitutionally Retroactive

{¶ 43} Relator argues that the commission erred by applying R.C. 4123.58(G) to his application for PTD compensation since it was filed before the effective date of the statute. Relator contends that applying R.C. 4123.58(G) to PTD applications already pending at the time the statutory provisions became effective constitutes an impermissible retroactive application.

{¶ 44} Before turning to the merits of the question presented, it is necessary to consider the appropriate standard of review. Relator argues the commission abused its discretion by applying the statute retroactively in the absence of clear intent. The commission does not specifically articulate a standard of review with regard to the constitutional question, but instead provides a general abuse of discretion standard. The magistrate finds this issue to be a constitutional challenge involving statutory interpretation, which is therefore reviewed de novo. *Newburgh Hts. v. State*, 168 Ohio St.3d 513, 2022-Ohio-1642, ¶ 18, quoting *Put-In-Bay v. Mathys*, 163 Ohio St.3d 1, 2020-Ohio-4421, ¶ 11 (" 'We review constitutional challenges to state and local legislation de

novo.' "); *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, ___ Ohio St.3d ___, 2022-Ohio-4677, ¶ 42-43; *State ex rel. McDonald v. Indus. Comm.*, 10th Dist. No. 20AP-386, 2021-Ohio-4494, ¶ 12, citing *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶ 14 ("Statutory interpretation presents a question of law subject to a de novo standard of review."). When considering questions of statutory interpretation under Ohio law, " 'it is never mandatory for a court to defer to the judgment of an administrative agency' and a court should never do so to 'alter the meaning of clear text.' " *Autozone*, 2023-Ohio-633, at ¶ 16, quoting *TWISM* at ¶ 42.

{¶ 45} To begin, statutes enjoy a strong presumption of constitutionality. *State v. Cook*, 83 Ohio St.3d 404, 409 (1998), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147 (1955) ("A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality."). Therefore, " ' "before any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision." ' " *Newburgh* at ¶ 19, quoting *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, ¶ 10, quoting *Williams v. Scudder*, 102 Ohio St. 305, 307 (1921).

{¶ 46} The Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments as follows:

> The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.

Article II, Section 28, Ohio Constitution.[2] *See State v. Lasalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, ¶ 13; *Coca-Cola Bottling Corp. v. Lindley*, 54 Ohio St.2d 1, 6 (1978), quoting *Lakengren, Inc. v. Kosydar*, 44 Ohio St.2d 199, 201 (1975) (stating that the constitutional

---

[2] The Supreme Court of Ohio has noted that the terms "retroactive" and "retrospective" have historically been used interchangeably. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 1, fn. 1; *Bielat v. Bielat*, 87 Ohio St.3d 350, 353 (2000).

"prohibition against retroactive laws 'is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby' "). "[T]he presumption against retroactive legislation is deeply rooted * * * and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

{¶ 47} Courts considering whether a statute is unconstitutionally retroactive must apply a two-part test articulated in *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100 (1988). *Lasalle* at ¶ 14. First, the reviewing court must determine whether the General Assembly expressly made the statute retroactive. *See Van Fossen* at 106 (stating that "[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly has specified that the statute so apply"); *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 10. Pursuant to R.C. 1.48, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Thus, where a statute contains "no clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment." *Kiser v. Coleman*, 28 Ohio St.3d 259, 262 (1986). *See Consilio* at ¶ 15 ("Retroactivity is not to be inferred.").

{¶ 48} The commission argues R.C. 4123.58(G) does not apply retroactively because "a retroactive application of the statute would mean that the newly amended version would apply to all previously adjudicated second applications for PTD." (Comm. Brief at 6.) This argument, however, does not comport with the statutory text enacting R.C. 4123.58(G). Under the terms of H.B. 75, R.C. 4123.58(G) "appl[ies] to claims pending on or arising on or after the effective date of this section," which was September 28, 2021. 2021 Am.Sub.H.B. No. 75, Section 8. Based on this express indication, it is clear the General Assembly made the statute in question retroactive. *See State ex rel. Kilbane v. Indus. Comm.*, 91 Ohio St.3d 258, 259 (2001) (finding the "express legislative intent for retroactivity is obvious here because uncodified law makes the [amendment] applicable to all 'pending' claims for compensation, with certain exceptions," thereby "chang[ing] the way the commission reviews applications to settle claims and applies to causes of action * * * that arose prior to the effective date of the statute"); *Ackison v. Anchor Packing Co.*,

120 Ohio St.3d 228, 2008-Ohio-5243, ¶ 13 (finding statute expressly made retroactive where General Assembly directed that amended statutory provisions applied to cases pending on and thus filed before the effective date of the amendments); *Thorton v. Montville Plastics & Rubber, Inc.*, 121 Ohio St.3d 124, 2009-Ohio-360, ¶ 19 (finding amendment to R.C. 4123.512(H) that was applicable to claims pending on the effective date of the amendment applied retroactively); *Van Fossen* at 106. The commission also cites to this court's decision in *State ex rel. Hamilton v. Indus. Comm.*, 10th Dist. No. 19AP-510, 2021-Ohio-1824, in arguing that R.C. 4123.58(G) does not apply retroactively. In *Hamilton*, however, it was found that the first factor was not met "because the legislature did not clearly express an intent for the new language [in the statute] to apply retroactively." *Id.* at ¶ 28. That case did not involve statutory language similar to that found in H.B. 75 applying the amendments to claims pending on the effective date of R.C. 4123.58(G). As a result, *Hamilton* is not determinative of the question presented in this case.

{¶ 49} Here, relator's second application for PTD compensation was filed on June 4, 2021. Because the second PTD application was filed before and remained pending when R.C. 4123.58(G) became effective on September 28, 2021, the statute applied retroactively to relator's claim. However, this does not end the analysis, but instead requires consideration of the second part of the retroactivity test—whether the statute is unconstitutionally retroactive.

{¶ 50} Under this second part of the analysis, a court will find that "[a] statutory enactment is repugnant to Section 28, Article II if it is expressly retroactive and is substantive, as opposed to merely remedial." *Lasalle,* 2002-Ohio-4009, at ¶ 13. "Substantive law" has been defined as "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties." *Black's Law Dictionary* 1658 (10th Ed.2014). "It is well established that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right." *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 37, citing *Van Fossen,* 36 Ohio St.3d at 107. *See Bielat v. Bielat*, 87 Ohio St.3d 350, 354 (2000) (stating that a retroactive law is one "that is 'made to affect acts or facts occurring, or rights accruing, before it came into

force' "); *Hope Academy Broadway Campus v. State Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 12, quoting *State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281 (1988) ("A statutory provision that attaches a new disability to a past transaction or consideration is not invalid unless the past transaction or consideration created at least a 'reasonable expectation of finality.' "); *State v. Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478, ¶ 10 (stating that "laws affecting rights, which may be protected by procedure, are substantive in nature.").

{¶ 51} On the other hand, remedial statutes are "are those affecting only the remedy provided" and "include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Van Fossen* at 107. A remedy has been defined as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." *Black's* at 1485.[3] Laws altering a tribunal's jurisdiction have also been found not to violate the constitutional ban on retroactive laws. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 19; *Landgraf*, 511 U.S. at 274, quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916) ("Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' "). Additionally, statutes "relating to procedures—rules of practice, courses of procedure, and methods of review— are ordinarily remedial in nature." *Brooks* at ¶ 10, citing *Van Fossen* at 108. *See Pivonka*

---

[3] The distinctions between substantive law, remedies, and procedure have been further explained as follows:

> "A remedy is anything a court can do for a litigant who has been wronged or is about to be wronged. The two most common remedies are judgments that plaintiffs are entitled to collect sums of money from defendants (damages) and orders to defendants to refrain from their wrongful conduct or to undo its consequences (injunctions). The court decides whether the litigant has been wronged under the substantive law that governs primary rights and duties; it conducts its inquiry in accordance with the procedural law. The law of remedies falls somewhere in between procedure and primary substantive rights. Remedies are substantive, but they are distinct from the rest of substantive law, and sometimes their details blur into procedure. For long periods in our past, remedies were casually equated with procedure."

*Black's* at 1485, quoting Douglas Laycock, *Modern American Remedies* 1 (4th Ed.2010.). Additionally, and somewhat contradictorily, the following explanation is given: "So far as the administration of justice is concerned with the application of remedies to violated rights, we may say that the substantive law defines the remedy and the right, while the law of procedure defines the modes and conditions of the application of one to the other." *Black's* at 1658, quoting John Salmond, *Jurisprudence* 476 (10th Ed.1947.).

*v. Corcoran*, 162 Ohio St.3d 326, 2020-Ohio-3476, ¶ 28 ("Litigants have no right to a particular remedy or procedure, and nothing prohibits the legislature from altering or modifying methods, procedures or remedies as it sees fit."); *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, ¶ 20; *Landgraf* at 275 (stating that "[c]hanges in procedural rules," which "regulate secondary rather than primary conduct," may frequently "be applied in suits arising before their enactment without raising concerns about retroactivity"); *Weil v. Taxicabs of Cincinnati, Inc.*, 139 Ohio St. 198, 205 (1942) (stating that remedies "have to do with the methods and procedure by which rights are recognized, protected and enforced, not with the rights themselves"); *Kilbreath v. Rudy*, 16 Ohio St.2d 70 (1968), paragraph two of the syllabus. A "procedural law" has been defined as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Black's* at 1398.

{¶ 52} Nearly as often as courts have classified laws as substantive, procedural, or remedial, they have acknowledged the difficulty in precisely defining and distinguishing between these formalistic classifications. *See State ex rel. Holdridge v. Indus. Comm.*, 11 Ohio St.2d 175, 178 (1967) ("It is doubtful if a perfect definition of 'substantive law' or 'procedural or remedial law' could be devised."); *Van Fossen* at paragraph 3 of the syllabus ("While in some cases the line between substantive and remedial may be difficult to ascertain, these terms, as applied, provide readily distinguishable contours."); *Landgraf* at 270 (stating that "[a]ny test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity," but noting that "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance"); *Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 12 ("The distinction between substantive and remedial statutes can be difficult to define, as a statute often contains attributes of both."); *State ex rel. Romans v. Elder Beerman Stores Corp.*, 100 Ohio St.3d 165, 2003-Ohio-5363, ¶ 14; *In re Smith*, 77 Ohio App.3d 1, 12 (6th Dist.1991). Given this difficulty, a review of pertinent cases is warranted.

{¶ 53} The Supreme Court of Ohio in *Van Fossen* considered whether a newly enacted amendment to the workers' compensation act, which placed stricter conditions on employer-employee intentional tort actions, was able to be applied retroactively to cases

pending in a court of appeals on the effective date of the statute. At issue was a provision in the new statute providing a definition of the term "substantially certain." The new statute provided that " ' "Substantially certain" means that an employer acts with *deliberate intent* to cause an employee to suffer injury, disease, condition, or death.' " (Emphasis sic.) *Van Fossen*, 36 Ohio St.3d at 108. However, at the time the claim was pending, the intentional tort requirement of substantial certainty was given the following definition under the common law: " '[A] specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is *substantially certain* * * * to occur.' " (Emphasis sic.) *Id.* at 108-09, quoting *Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90, 95 (1984). Because the new statute "would remove appellees' potentially viable, court-enunciated cause of action by imposing a new, more difficult statutory restriction upon appellees' ability to bring the instant action," the court held that "this result constitutes a limitation, or denial of, a substantive right, and consequently causes the statute to fall within the ban against retroactive laws established by Section 28, Article II of the Ohio Constitution." *Id.* at 109.

{¶ 54} In *Holdridge*, a workers' compensation claimant had lost function in both eyes, the second one due to an industrial accident. He had been declared permanently and totally disabled in 1947 under a statute that provided that "[i]n cases of permanent total disability, the award *shall be* sixty-six and two-thirds per cent of the average weekly wages, *and shall continue until the death of such person so totally disabled*," and further stated that "[t]*he loss of* both hands or both arms, or both feet or both legs, or *both eyes*, or of any two thereof, *shall prima facie* constitute total and permanent disability, to be compensated according to the provisions of this section." (Emphasis sic.) *Holdridge* at 177-78, quoting G.C. 1465-81. Several years later, Holdridge had "through persistent and determined efforts" developed accommodations that enabled him to have employment. *Id.* at 176. Based on this, the commission declared in 1964 that Holdridge was no longer permanently and totally disabled. However, the statute providing for Holdridge's disability benefits had been amended in 1959 to provide that " '[i]n cases of permanent total disability, the employee shall receive an award to continue until his death" of certain specified amounts and further stated that "[t]*he loss of* both hands or both arms, or both feet or both legs, or *both eyes*, or of any two thereof, *constitutes total and permanent*

*disability*, to be compensated according to *this section*." (Emphasis sic.) *Holdridge* at 178, quoting R.C. 4123.58.

{¶ 55} The *Holdridge* court examined the distinctions between substantive and procedural aspects of the statutes, stating:

> Each of the two statutes defines the loss of both eyes as a permanent and total disability. This is substantive law. Such a disability imposes a duty or obligation upon the employer under the law of Ohio to meet and overcome the prima facie evidence of total and permanent disability. The employer failed to overcome and, so far as we can determine from the record, did not endeavor to overcome the presumption of total disability. The Industrial Commission apparently recognized that the relator suffered a permanent and total disability and allowed compensation under both statutes. It follows, therefore, that since the prima facie proof factor concerned only the manner of arriving at a fact conclusion, upon which the substantive law would operate, it was itself procedural or remedial rather than substantive.

*Id.* at 178. With regard to retroactive application of remedial legislation, the court held that "[l]aws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws." *Id.* at paragraph one of the syllabus.

{¶ 56} In *Kilbane*, the court considered amendments to a workers' compensation statute regarding claim settlement hearings that applied to all pending claims for compensation with certain exceptions. The new statute removed the provision for commission hearings on applications for settlement approval. The former statute also permitted claimants to apply independently for the commission approval, whereas the new statute required the employer's signed assent to the application and a settlement agreement as a prerequisite. The court found that the former settlement hearing provisions represented a "course of procedure" in that "[t]hey existed as part of the process by which Kilbane, upon qualifying for compensation, enforced her right to receive it." *Kilbane*, 91 Ohio St.3d at 260. Therefore, the court held that "those provisions were remedial in nature and may be changed or revoked by the legislature without offending the Constitution" because although "entitlement to workers' compensation, being a

substantive right, is measured by the statutes in force on the date of her injury, * * * the same is not true for laws affecting only the enforcement of that right." *Id.* at 259-60.

{¶ 57} Outside of the workers' compensation context, the court in *Ackison* considered legislation that added certain threshold requirements to asbestos claims. Under the legislation, a party seeking to bring such claim was required to file with the court certain qualifying medical evidence of physical impairment, with such evidence being supported by the written opinion of a competent medical authority stating the claimant's exposure to asbestos was a substantial contributing factor to the medical condition. A claimant's failure to file the required preliminary evidence and medical opinion resulted in the claim being dismissed without prejudice, enabling refiling when the threshold requirements were met. The legislation provided that the threshold requirements and dismissal provision applied to all asbestos cases pending in Ohio courts, regardless of whether they were filed before or after the effective date of the legislation. The trial court applied the legislation to dismiss Ackison's asbestos claims, but the court of appeals reversed, holding that because Ackison's suit had been filed before the effective date of the statutory changes, she had a vested substantive right to pursue recovery for her husband's illness and death under the statutory scheme in effect at the time she filed her complaint.

{¶ 58} The Supreme Court of Ohio disagreed, stating the amended statutes were procedural, not substantive because they " 'do not relate to the rights and duties that give rise to this cause of action or otherwise make it more difficult for a claimant to succeed on the merits of a claim' " but instead " 'pertain to the machinery for carrying on a suit.' " *Ackison*, 2008-Ohio-5243, at ¶ 16, quoting *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, ¶ 17. The court recognized that the amended statutes "establish[ed] 'a procedural prioritization' of asbestos-related cases" by " 'prioritiz[ing] the administration and resolution of a cause of action that already exists.' " *Id.* at ¶ 17, quoting *Norfolk* at ¶ 16. The court concluded that the statutes placed " '[n]o new substantive burdens' " on claimants, but " 'merely substitute[d] a new or more appropriate remedy for the enforcement of an existing right.' " *Id.*, quoting *State v. Cook*, 83 Ohio St.3d at 411.

{¶ 59} As the foregoing recitation of cases demonstrates, the "readily distinguishable contours" between substantive and remedial laws oftentimes become blurred when the laws in question appear to contain both substantive and procedural

characteristics. *Van Fossen* at paragraph three of the syllabus. Here, relator argues the retroactive application of R.C. 4123.58(G) is substantive and not remedial though without providing specific reasons for such conclusion. The commission argues R.C. 4123.58(G) is remedial in nature because it does not preclude the filing of a second PTD application, but rather merely describes how the filing and processing is to occur for all second PTD applications. In order to distinguish whether the statute at issue in this matter is substantive or remedial, it is necessary to understand the differences between the state of the law before and after H.B. 75.

**{¶ 60}** Prior to H.B. 75, the Supreme Court of Ohio held that "a showing of new and changed circumstances is not 'a prerequisite to commission consideration of a subsequent application for permanent total disability compensation after an initial denial.' " *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 86 (1997), quoting *State ex rel. Youghiogheny & Ohio Coal Co. v. Indus. Comm.*, 65 Ohio St. 3d 351, 352-53 (1992). *See State ex rel. Pactive Corp./Tenneco Packaging v. Harvey*, 10th Dist. No. 03AP-1272, 2004-Ohio-5158, ¶ 5. Notably, in *Youghiogheny*, the claimant's second application for PTD compensation was granted even though it was filed a mere four weeks after the commission denied his first application.

**{¶ 61}** Under the new law, following a final order of the commission denying a prior application for PTD, a claimant must "present evidence of new and changed circumstances *before the industrial commission may consider a subsequent application*." (Emphasis added.) R.C. 4123.58(G). The phrase "new and changed circumstances" is not defined under the statute. However, this concept is not new to the law of workers' compensation, having application with regard to the commission's exercise of continuing jurisdiction under R.C. 4123.52 and claims for an increase in percentage of permanent partial disability ("PPD") under R.C. 4123.57(A).

**{¶ 62}** Pursuant to R.C. 4123.52, the commission has continuing jurisdiction over each case and, subject to certain temporal limitations, it "may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). Despite this "broad statutory language," the Supreme Court of Ohio has construed R.C. 4123.52 to limit the commission's continuing jurisdiction, holding that "the prerequisites for its exercise are (1) new and changed circumstances, (2) fraud,

(3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal," despite the absence of statutory language to that effect. *State ex rel. Knapp v. Indus. Comm.*, 134 Ohio St.3d 134, 2012-Ohio-5379, ¶ 13, citing *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-59 (1998), citing *State ex rel. Cuyahoga Hts. Local School Dist. Bd. of Edn. v. Johnston*, 58 Ohio St.2d 132 (1979). *See State ex rel. Griffey v. Indus. Comm.*, 125 Ohio St. 27, 31 (1932) (stating that G.C. 1465-86, which allowed the commission to " 'from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion may be justified' * * * could not have been intended to take away all finality to the orders and findings of the commission"). Similar to R.C. 4123.52, applications for an increase in PPD must be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination." R.C. 4123.57(A).

{¶ 63} Given the inherently factual nature of the determination, the parameters of what type and quantity of evidence is sufficient to establish "new and changed circumstances" have not been precisely defined. Instead, the commission and courts have examined this on a case-by-case basis, developing some guiding principles along the way. *See State ex rel. Ross v. Indus. Comm.*, 118 Ohio St.3d 73, 2008-Ohio-1739, ¶ 17 (stating that "the mere submission of new evidence is not automatically a new and changed circumstance"); *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991) (finding that establishing new and changed circumstances entails demonstrating that "conditions have changed subsequent to the initial award," and not simply evidence which was "newly acquired"); *State ex rel. Gen. Motors Corp., Chevrolet Motor Div. v. Indus. Comm.*, 54 Ohio St.2d 333, 334 (1978) (holding that "a medical report or reports concluding percentage increases, beyond percentages previously reported in connection with the original claim, is not an improper consideration under R. C. 4123.57(B) of 'new and changed circumstances developing since the time of the hearing on the original or last determination' "); *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 131 Ohio St.3d 231, 2012-Ohio-542, ¶ 17 (stating that "the worsening of an existing medical condition or a newly allowed medical condition often serves as new and changed circumstances justifying the exercise of continuing jurisdiction to modify a previous order"); *Knapp,* 2012-Ohio-5379, at ¶ 17 (applying a previously effective industrial commission resolution pertaining

to the exercise of continuing jurisdiction pursuant to R.C. 4123.52 to find that "[n]ew and changed circumstances means 'there exists newly discovered evidence' "); *State ex rel. Rocktenn Co. v. Long*, 10th Dist. No. 12AP-862, 2013-Ohio-5296, ¶ 8.

{¶ 64} Review of R.C. 4123.58(G) reveals that it is remedial, not substantive because it is concerned with "the methods and procedure by which rights are recognized, protected and enforced, not with the rights themselves." *Weil*, 139 Ohio St. at 205. First, R.C. 4123.58(G) does not foreclose a claimant's ability to make a subsequent application for PTD after the failure of a prior application. Instead, similar to the prima facie filing requirements considered in *Ackison*, it adds a procedural component requiring a claimant to make an initial showing sufficient to permit consideration of the PTD application. Importantly, this preliminary determination of new and changed circumstances occurs *before* the commission is permitted to consider the merits of the application and does not change the analysis of the merits of the PTD application.

{¶ 65} In this way, and perhaps most importantly with regard to retroactivity, R.C. 4123.58 does not change the burden, nature, or quantum of proof needed to establish entitlement to PTD compensation. The burden remains on the applicant to prove permanent total disability by establishing under a preponderance of the evidence that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121-3-34(D)(3)(a); *Sheppard*, 2014-Ohio-1904, at ¶ 16. The pertinent inquiry remains the same—whether the applicant engages in or is medically capable of sustained remunerative employment. *Compare Hearing v. Wylie*, 173 Ohio St. 221 (1962), paragraph two of the syllabus (holding that the alteration of the definition of "injury" by an amendment, which applied to claims pending at the time the amendment became effective, was unconstitutionally retroactive because a worker's right "to compensation for an injury is a substantive right, and a change by the General Assembly in the statutory definition of 'injury' theretofore not compensable is a change in a substantive right"); *Van Fossen,* 36 Ohio St.3d at 108-09.

{¶ 66} Rather than taking away or impairing a substantive right to PTD compensation, R.C. 4123.58(G) creates a procedure or mechanism for enforcement of that right by which subsequent PTD applications are to be adjudicated following the denial of an initial application. Thus, the requirement under R.C. 4123.58(G) to demonstrate new

and changed circumstances " 'do[es] not relate to the rights and duties that give rise to this cause of action or otherwise make it more difficult for a claimant to succeed on the merits of a claim' " for PTD compensation but instead " 'pertain[s] to the machinery for carrying on a suit' " by regulating secondary conduct. *Ackison*, 2008-Ohio-5243, at ¶ 16, quoting *Norfolk*, 2007-Ohio-5248, at ¶ 17. *See Holdridge*, 11 Ohio St.2d at 178 (stating that because the "prima facie proof factor concerned only the manner of arriving at a fact conclusion, upon which the substantive law would operate, it was itself procedural or remedial rather than substantive"); *Romans*, 2003-Ohio-5363, at ¶ 20 (finding that amendment altering time limitations with respect to the continuing jurisdiction of the commission under R.C. 4123.52 was remedial because the alteration "did not alter claimants' already established right to participate" but instead fashioned a more appropriate remedy for the enforcement of that right); *Longbottom v. Mercy Hosp. Clermont*, 137 Ohio St.3d 103, 2013-Ohio-4068, ¶ 26; *Morgan v. W. Elec. Co.*, 69 Ohio St.2d 278, 281 (1982), fn. 5; *Kilbane,* 91 Ohio St.3d at 259-60.

{¶ 67} Based on the foregoing, the magistrate concludes the application of R.C. 4123.58(G) to pending claims does not violate the constitutional prohibition on retroactive laws. Therefore, it was not error for the commission to apply R.C. 4123.58(G) to relator's claim as it was pending when the statutory provision became effective on September 28, 2021.

## D. Whether the Requirements of R.C. 4123.58(G) Were Met

{¶ 68} Having found R.C. 4123.58(G) is not unconstitutionally retroactive, the remaining question is whether the SHO erred in concluding relator failed to meet his burden under the statute of presenting evidence of new and changed circumstances to enable the commission to consider the application. Relator argues his allowed condition of major depressive disorder has regressed to a point that prevents him from performing any sustained remunerative employment. In support of this argument, relator points to the difference in assessed impairment and restrictions between the report of Dr. Jones in support of the initial PTD application and the reports of Drs. DiMarzio and Pecorelli in the subsequent years.

{¶ 69} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Given the commission's role as the exclusive factfinder, this court "cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence." *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 26. In reviewing a decision of the commission regarding new and changed circumstances, a relator has the burden of showing the commission abused its discretion by entering an order not supported by any evidence in the record. *Akron Paint*, 2012-Ohio-542, at ¶ 11 (finding commission abused its discretion in determining there existed evidence to support a finding of new and changed circumstances to exercise continuing jurisdiction under R.C. 4123.52). Furthermore, the commission is required to "specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), paragraph one of the syllabus. *See* S*tate ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481, 484 (1983).

{¶ 70} Prior to the adjudication of the first application for PTD compensation, relator was examined by Drs. DiMarzio and Jones with regard to the allowed psychological condition of major depressive disorder, single episode. In the 2018 report that was submitted in support of the first PTD application, Dr. DiMarzio found a 25 percent disability due to the allowed psychiatric condition alone. Dr. DiMarzio concluded relator was permanently and totally disabled from any and all forms of remunerative employment. At the request of the commission, Dr. Jones examined relator in 2019. Dr. Jones opined that relator's allowed psychological condition had reached MMI and resulted in a three percent whole person impairment.  Dr. Jones stated that relator was "functioning fairly well from a psychological standpoint," and concluded relator would be capable of working. (Stip. at 32.)

{¶ 71} In the 2020 order denying relator's first PTD application, the SHO stated that the order was "based upon the narrative report from the state's orthopedic physician Gary Greenspan, M.D., and state examining psychologist Lynn Luna-Jones, Ph.D." (Stip.

at 38.) With regard to relator's allowed psychological condition, the SHO made the following findings:

> Dr. Jones who examined [relator] on behalf of the Industrial Commission strictly regarding [relator's] psychiatric condition only, indicated that [relator's] condition has also reached maximum medical improvement, and that he can return to his former position of employment without any restrictions at all. She further indicated that [relator] has a three percent permanent partial impairment with respect to her [sic] whole person as it relates to [relator's] psychiatric condition currently recognized in [relator's] sole industrial injury.

(Stip. at 38.) The SHO made the following conclusions:

> Therefore, based upon the opinions of Dr. Greenspan and Dr. Jones who combined have examined [relator] on all of the allowed conditions for which [relator's] sole industrial injury is recognized, the [SHO] concludes on a whole that [relator] is medically capable of performing some sustained remunerative employment ie sedentary work.
>
> * * *
>
> Therefore, based upon the limited physical and psychological restrictions as indicated by Dr. Jones and Dr. Greenspan who both indicate on a whole that [relator] can perform sedentary work coupled with [relator's] young age, high school education and work history in various settings, the [SHO] finds that [relator] is not precluded from engaging [in] sustained remunerative employment, and is therefore not permanently and totally disabled.

(Stip. at 39-40.) The SHO did not rely on or otherwise mention the report of Dr. DiMarzio.

{¶ 72} For purposes of the second PTD application, relator was again examined by Dr. DiMarzio in addition to an exam conducted by Dr. Pecorelli. Dr. DiMarzio found in the 2020 report that relator had a disability of approximately 30 percent based solely on the allowed psychiatric condition. Dr. DiMarzio stated that relator's "[d]epressive symptoms are still within severe ranges, despite psychiatric and psychological interventions," and noted that relator "has had psychotherapy, and has not made significant improvement." (Stip. at 51.) Dr. DiMarzio again concluded that relator was permanently and totally disabled from any and all forms of remunerative employment. Dr. Pecorelli, who examined relator at the request of the commission, found in a 2021 report that relator's allowed

psychological condition had reached MMI and resulted in a 35 percent whole person impairment. Dr. Pecorelli found that relator "continues to experience moderately severe emotional distress characterized as a Major Depressive Disorder, Single Episode that interfere with his mental and behavioral capacities." (Stip. at 74.) Dr. Pecorelli stated that relator "may likely have difficulty being aware of the normal hazards in the work environment and maintaining safety awareness." (Stip. at 74.) In conclusion, Dr. Pecorelli found that "[t]he residual symptoms associated with the allowed psychological conditions would interfere with and prevent a successful return to gainful employment" and indicated in the occupational activity assessment that relator was incapable of work. (Stip. at 74.)

{¶ 73} The SHO made the following findings in support of the determination that relator failed to present evidence of new and changed circumstances in order to permit consideration of the second PTD application:

> The Staff Hearing Officer finds that the Injured Worker has failed to present evidence of new and changed circumstances for the Industrial Commission to consider this subsequent Application for Permanent Total Disability Compensation filed 06/04/2021.
>
> The Staff Hearing Officer specifically finds that a previous Application for Permanent Total Disability Compensation filed 02/06/2019, was denied by way of the Staff Hearing Officer order issued 01/18/2020.
>
> * * *
>
> The Staff Hearing Officer finds that there is insufficient evidence of new and changed circumstances, prior to the 06/04/2021 filing of this Application for Permanent Total Disability Compensation to permit the Industrial Commission to consider this subsequent Application.
>
> This decision is based on a review of the Staff Hearing Officer order issued 01/18/2020, and a review of the State claim file.
>
> This order is being placed pursuant to R.C. 4123.58(G).
>
> All of the evidence was reviewed and considered in rendering this decision.

(Stip. at 79-80.)

{¶ 74} Here, the SHO does not briefly explain the basis for the determination that relator failed to demonstrate new and changed circumstances with reference to the

evidence in the record. Following the denial of relator's initial application for PTD compensation, Drs. DiMarzio, Hartwig, Gliner, and Pecorelli issued reports regarding relator's condition. The SHO does not specifically mention any medical reports that were relied upon in reaching its conclusion, but rather makes a boilerplate statement regarding a review of the entire claim file and all of the evidence.

{¶ 75} Most problematically, the SHO does not explain the difference in percentages of disability between the 2019 report of Dr. Jones, the only psychological report relied upon in the order denying relator's first application for PTD compensation, and the percentages found in the 2020 report of Dr. DiMarzio and the 2021 report of Dr. Pecorelli, which were available for consideration with respect to relator's second PTD application. Again, Dr. Jones, who served as the commission's psychological examiner for the first PTD application, found a 3 percent impairment and concluded relator was capable of working. Dr. DiMarzio found relator had a 30 percent impairment, an increase of 5 percent from Dr. DiMarzio's 2018 report and 27 percent higher than the conclusion of Dr. Jones. Dr. Pecorelli, the commission's examiner for the allowed psychological condition in the second PTD application, found that relator had a 35 percent impairment, an increase of 32 percent from Dr. Jones. Both Drs. DiMarzio and Pecorelli concluded relator was incapable of work. Although the SHO references the order denying relator's initial PTD application, the SHO does not explain how that order's reliance on the report of Dr. Jones alone for relator's allowed psychological condition relates to the evidence submitted in support of the second PTD application.

{¶ 76} As previously noted, findings of percentage increases in medical reports may serve as a proper consideration for finding new and changed circumstances. *Gen. Motors,* 54 Ohio St.2d at 334. Furthermore, "the worsening of an existing medical condition or a newly allowed medical condition" can support a finding of new and changed circumstances. *Akron Paint,* 2012-Ohio-542, at ¶ 17. In the absence of sufficient reasoning from the commission with reference to the evidence in the record, it is exceedingly difficult to determine whether there exists some evidence to support the conclusion that was reached. As this court has previously stated, "where the evidence cited by the commission suggests a different result than the conclusion announced by the commission, the commission's reasoning is critical." *State ex rel. Shipley v. Ludowici-Celadon*, 10th Dist.

No. 05AP-1172, 2006-Ohio-6893, ¶ 4. *See State ex rel. Campbell v. Conrad*, 10th Dist. No. 01AP-1158, 2002-Ohio-2773, ¶ 47 (stating that "the DHO found that no new and changed circumstances were established, but he failed to provide any reasoning for this finding that connects to the evidence of record"). Therefore, the circumstances present in this case warrant granting a limited writ of mandamus ordering the commission to (1) specifically state the evidence the commission relied on in reaching its decision and (2) briefly explain the reasoning for the commission's decision. *See State ex rel. Cline v. Abke Trucking, Inc.*, 137 Ohio St.3d 557, 2013-Ohio-5159, ¶ 18 (issuing a limited writ of mandamus returning the matter to the commission to issue a new order that specifically states the evidence relied upon and briefly explains its reasoning); *State ex rel. Merritt v. Indus. Comm.*, 161 Ohio St.3d 380, 2020-Ohio-4379, ¶ 6.

**E. Conclusion**

{¶ 77} Accordingly, it is the decision and recommendation of the magistrate that a limited writ of mandamus should be granted returning the matter to the commission to issue a new order that (1) specifically states the evidence the commission relied on in reaching its decision and (2) briefly explains the reasoning for the commission's decision.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.