[Cite as *State ex rel. Parsons v. Indus. Comm.*, 2025-Ohio-1792.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Keith Parsons, | : | |
| Relator, | : | |
| | : | No. 24AP-30 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

---

D E C I S I O N

Rendered on May 20, 2025

---

**On brief:** *Casper, Casper and Casper LLC*, and *Douglas W. Casper*, for relator.

**On brief:** *Dave Yost,* Attorney General, and *Diane Burris*, for respondent Industrial Commission of Ohio.

**On brief:** *McCaslin, Imbus & McCaslin*, and *Joseph C. Gruber*, for respondent Thyssenkrupp Bilstein of America, Inc.

---

IN MANDAMUS

BOGGS, J.

{¶ 1}  Relator, Keith Parsons, has filed this original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio (the "commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation.  For the following reasons, we deny Parsons's request for a writ of mandamus.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.  The magistrate considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended

hereto. The magistrate recommends that we deny this petition for a writ of mandamus because there is some evidence to support the commission's determination that Parsons's psychological conditions did not sufficiently worsen during the time between the denial of his first PTD application in March 2021 and the filing of his second PTD application in March 2023 to demonstrate "new and changed circumstances" under R.C. 4123.59(G).

**{¶ 3}** No objections have been filed to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision unless the court determines that there is an error of law or other defect evident on the face of the decision." Civ.R. 53(D)(4)(c).

**{¶ 4}** Upon review, we find no error in the magistrate's findings of fact or conclusions of law. Therefore, we adopt the magistrate's decision, including the findings of fact and the conclusions of law therein, as our own, conclude that Parsons has failed to establish a right to a writ of mandamus, and deny the requested writ.

*Petition for writ of mandamus denied.*

DORRIAN and LELAND, JJ., concur.

———————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Keith Parsons, | : | |
| Relator, | : | |
| v. | : | No. 24AP-30 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 28, 2025

*Casper, Casper and Casper LLC*, and *Douglas W. Casper*, for relator.

*Dave Yost*, Attorney General, and *Michael A. Wehrkamp,* for respondent Industrial Commission of Ohio.

*McCaslin*, *Imbus & McCaslin*, and *Joseph C. Gruber*, for respondent Thyssenkrupp Bilstein of America, Inc.

IN MANDAMUS

{¶ 5}   Relator, Keith Parsons ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his application for permanent total disability ("PTD") compensation and find there existed continuing jurisdiction to address claimant's claim for PTD compensation.

Findings of Fact:

{¶ 6}    1. On October 29, 2013, claimant sustained an injury in the course of and arising out of his employment with Thyssenkrupp Bilstein of America, Inc. ("employer"). His workers' compensation claim was allowed for the following conditions: sprain lumbar region; lateral disc protrusion L4-L5; annular tear L4-L5; annular tear L5-S1; post laminectomy syndrome, lumbar; disc herniation L2-L3; spondylosis without myelopathy or radiculopathy, lumbar region L3-L4; spondylosis without myelopathy or radiculopathy, lumbar region L5-S1; undifferentiated somatoform disorder; major depressive disorder, single episode, moder; and anxiety disorder, unspecified.

{¶ 7}    2. After the injury, claimant's claim was allowed for the physical conditions, and he underwent two back surgeries and several other procedures, with his last being in 2020. Claimant was awarded temporary total disability compensation ("TTD") for his allowed physical conditions.

{¶ 8}    3. On September 10, 2019, the commission found that claimant had reached maximum medical improvement ("MMI") as to his physical conditions and terminated TTD compensation as of July 30, 2019.

{¶ 9}    4. In a September 13, 2019, report, Jennifer Stoeckel, Ph.D., found the following: (1) claimant feels isolated, has lost weight, has a diminished libido, feels worthless, is irritable, has tearful episodes, has diminished memory and focus, is anxious, and has chronic worry and anxiety but does not report hallucinations; (2) claimant has severe levels of depression, anxiety, and somatic focus; (3) claimant has developed major depressive disorder, single episode, severe, without psychotic features; unspecified anxiety disorder; and somatic symptom disorder with predominant pain as a direct and proximate result of his physical injuries sustained in 2013; and (4) these conditions are work prohibitive.

{¶ 10} 5. On October 11, 2019, Gordon A. Harris, Ph.D., issued a report, in which Dr. Harris found the following: (1) the evidence supports the allowance of the requested psychological conditions; and (2) claimant has sporadic crying spells, feels depressed all the time, wants to crawl under a rock and die, has panic attacks, feels helpless, denies hallucinations, complains of sleep disturbances, has significant emotional distress, feels pessimistic, is worry prone and ruminative, has anxiety, has somatic delusions, and has unusual thoughts and perceptions.

{¶ 11} 6. On October 31, 2019, claimant's claim was allowed for the following psychological conditions: undifferentiated somatoform disorder; major depressive disorder, single episode, moderate; and anxiety disorder, unspecified. The commission based its decision on Dr. Harris's October 11, 2019, report.

{¶ 12} 7. Claimant's treatment records from Michael T. Farrell, Ph.D. & Associates (Leanne T. Bolo, M.A.; Dennis J. Schneider, Ed.D.; Dipika Shah, M.D.), from January 2020 until June 2020 indicate claimant suffers from and/or reported the following conditions and symptoms, in pertinent part: mood changes resulting in the destruction of relationship; declining interest in previously enjoyed activities; anger; agitation; depression; hopelessness; racing thoughts; crying spells; helplessness; trouble sleeping; occasional auditory hallucinations (January 2020); loss of sense of self-worth; frustration with present circumstances; helplessness; depression; anger; auditory hallucinations (February 2020); post-injury vocational and financial losses destabilizing his life; hopelessness and helplessness; depression; anger; agitation; auditory hallucinations two to three times per day; crying spells; feelings of worthlessness (May 2020); severe depression; anger; agitation; hearing voices two to three times per day; crying spells; isolation, feelings of emptiness and worthlessness (June 2020).

{¶ 13} 8. On June 26, 2020, claimant filed his first application for PTD compensation.

{¶ 14} 9. From June 2020, until March 2021, claimant's treatment records from Michael T. Farrell, Ph.D. & Associates, indicate claimant suffers from and/or reported the following conditions and symptoms, in pertinent part: severe depression; feelings of being trapped and helpless; anger; agitation; hearing voices; crying spells; isolation; feelings of emptiness and worthlessness (July 2020); increased ideations of death due to pain management difficulties (July 2020); moderate depression; anger; agitation; better sleep; hears occasional voices (August 2020); diminished self-worth and self-efficacy; struggling to come to terms with vocational and personal losses; anger; anxiety (October/November 2020); very upset; frazzled; bad premonitions; high anxiety; crying; frustrated; auditory and visual hallucinations; denied feeling worthless; better sleep; moderate depression (January 2021); high anxiety; moderate depression; frustration; auditory hallucinations; better sleep (February 2021).

{¶ 15} 10. In a December 23, 2020, specialist report, Debjani Sinha, Ph.D., indicated the following with regard to claimant's allowed psychological conditions: apathy; variable appetite and weight; sleep was not good, 4 to 6 hours per night; irritability; crying spells twice a week; hopelessness; scattered memory; difficulty concentrating; mild depression, symptoms wax and wane; static clinical symptom presentation; claimant has reached MMI; daily living – moderate impairment (30 percent); social functioning - mild impairment (10 percent); concentration, persistence, and pace – mild impairment (15 percent); adaptation – mild impairment (10 percent); whole person impairment is 18 percent; claimant is capable of sustained remunerative employment; memory limitations are mild.

{¶ 16} 11. In a March 16, 2021, order, a staff hearing officer ("SHO") denied claimant's first application for PTD compensation, finding the following with regard to claimant's psychological conditions: (1) Dr. Sinha noted in her December 10, 2020, report that claimant thought he had benefited from therapy, opined that claimant had reached MMI for the psychological conditions, and noted claimant had moderate impairment in his activities of daily living but mild impairment in the areas of social functioning, concentration, persistence and pace, and adaptation; (2) Dr. Sinha concluded that claimant is capable of sustaining remunerative employment based solely on the allowed psychological conditions with some limitations; (3) claimant has reached MMI for all of the allowed conditions; (4) claimant is unable to return to his former position of employment; (5) claimant retains the residual functional capacity to perform sedentary work activity with some limitations based upon the allowed psychological conditions; (6) although his age is not a positive vocational asset, the other vocational factors are positive; and (7) based upon claimant's ability to return to sedentary work activity, with some limitations due to his psychological conditions, his education level, and strong work history, claimant is able to perform sustained remunerative employment and is not permanently and totally disabled.

{¶ 17} 12. From March 2021 until March 2023, claimant's treatment records from Michael T. Farrell, Ph.D. & Associates, indicate claimant suffered from and/or reported the following symptoms and conditions, in pertinent part: increased engagement with love ones to improve support; improving mood and sense of hope; somewhat more at ease given self-advocacy within the disability network; anxiety, depression, and racing thoughts (June 2021); diminished sense of autonomy; struggling to find purpose (July 2021); increased

hope regarding post-injury circumstances (August 2021); considerable psychological decompensation given absence from treatment (November 2021); daily bouts of tearfulness; ruinations on his vocational and personal loses; hopelessness; and helplessness (November 2021); moderate depression varying with the level of pain; panic attacks; auditory hallucinations almost daily (December 2021); hopelessness, lack of purpose, and sadness (January 2022); moderate depression; panic attacks; increased auditory hallucinations (February 2022); moderate depression; high anxiety; panic attacks; increased auditory hallucinations (April 2022); moderate depression; panic attacks twice per day; increased audio hallucinations; seeing shadows in peripheral vision (May 2022); markedly improved mood; smiled during session; relief that approved for social security; positive interactions with his family; increased anxiety; moderate depression; unchanged high anxiety; continued panic attacks; auditory and visual hallucinations (July 2022); doing poorly; moderate depression; agitation; high anxiety unchanged; continued panic attacks; auditory and visual hallucinations (September 2022); nightmares; moderate depression; unchanged high anxiety; continued panic attacks; auditory hallucinations; seeing shadows in peripheral vision (November 2022); overall doing better; moderate depression; high anxiety unchanged; panic attack; auditory hallucinations; seeing shadows in peripheral vision (January 2023); more anxious and depressed; moderate depression; high anxiety; panic attacks; auditory and visual hallucinations (March 2023).

{¶ 18} 13. In a May 26, 2021, report, George Lester, Ph.D., found the following: (1) claimant denies any hallucinations, delusions, or symptoms of impaired reality testing; (2) he is always hopeless and depressed; (3) he has crying spells and decisiveness; (4) he feels restless, shaky, jumpy, irritable, and on edge; (5) testing reveals depression in the severe range, with areas of self-dislike, loss of pleasure, irritability, loss of interest, and feelings of worthlessness and indecisiveness; (6) testing reveals his anxiety in the severe range, with difficulty sleeping, nervousness, racing thoughts, and fears of the worst happening; (7) he has moderate impairment in terms of activities of daily living, social functioning, concentration, persistence, pace, and adaptation; and (8) he has a combined whole-person impairment rating of 37 percent.

{¶ 19} 14. In a March 18, 2022, report, Dr. Stoeckel found the following: (1) claimant's psychological conditions have substantially worsened in the last year;

(2) claimant is permanently and totally disabled from all work activity based upon his psychological conditions; (3) claimant's emotional consequences of his injuries are significant and have progressively worsened; (4) he is depressed all day, every day; has fluctuating appetite, diminished libido, feelings of worthlessness and guilt, loss of interest, social withdrawal, irritability, frequent tearful episodes, emotional liability, chronic tension, low frustration tolerance, diminished memory and concertation, indecision, hypervigilance, hyper startle reaction, avoidance behavior, panic, interpersonal suspiciousness, anger, poor concentration, and impulsivity; (5) he has frequent auditory and visual hallucinations; (6) over the past 1-1/2 years, he has decompensated; and (7) claimant's reality testing is poor, and he is experiencing frequent auditory and visual hallucinations associated with his depressive condition.

{¶ 20} 15. On March 17, 2023, claimant filed a second application for PTD compensation, relying upon Dr. Stoeckel's March 18, 2022, report.

{¶ 21} 16. In an August 31, 2023, specialist report, Stephen Halmi, Ph.D., found the following: (1) daily living – moderate impairment 40 percent; (2) social functioning – moderate impairment 30 percent; (3) concentration, perseverance, pace – moderate impairment 40 percent; (4) adaptation – moderate impairment 40 percent; (5) whole-person impairment 38 percent; (6) claimant has reached MMI with respect to his psychological conditions; (7) claimant's mental limitations preclude him from working in any environment; (8) claimant's psychological conditions are severe and debilitating; and (9) claimant is permanently and totally impaired from employment as a result of his allowed psychological conditions.

{¶ 22} 17. In a December 5, 2023, order, an SHO denied claimant's second application for PTD compensation, finding the following: (1) claimant has not submitted sufficient evidence of new and changed circumstances to warrant adjudicating another application; (2) there have been no amendments or additional medical conditions allowed in the claim since the first application was adjudicated; (3) claimant has not undergone any additional surgeries or had any other substantial medical procedures performed since claimant's first application was adjudicated; (4) claimant has not requested any TTD compensation since the prior PTD compensation hearing, which is indicia that claimant's medical conditions are essentially stable; (5) claimant did not provide any evidence or

testimony at the hearing that he has attempted to return to work in any way or requested vocational rehabilitation since the first application was adjudicated; (6) claimant's medical care has been maintenance care, and the only real change is that he has aged since the denial of his first application for PTD compensation and was granted social security disability in 2022; and (7) although claimant's argument that his psychological conditions worsened during the time between his first PTD application denial in March 2021 and Dr. Stoeckel's March 18, 2022, report, claimant's psychological medical treatment during this limited period indicated that claimant was engaged in supportive and maintenance-type psychological medical treatment, often coupled with maintenance medication management, and these medical records are insufficient to find the requisite new and changed circumstances to warrant adjudicating another application.

{¶ 23} 18. On January 10, 2024, claimant filed the present petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 24} The magistrate recommends that this court deny claimant's writ of mandamus.

{¶ 25} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 26} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 27} Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex*

*rel. Arias v. Indus. Comm. of Ohio*, 49 Ohio St. 3d 76 (1990). In each of its orders granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206 (1991). An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it. *Id.*

{¶ 28} "[T]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings of orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). The commission may exercise its continuing jurisdiction if one of the following prerequisites is met: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Gobich v. Indus. Comm.*, 2004-Ohio-5990, ¶ 14.

{¶ 29} In *State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713 ("*Prinkey II*"), the Supreme Court of Ohio explained the meaning of "new and changed circumstances," as follows:

> When considering a subsequent application for PTD compensation, the threshold inquiry under R.C. 4123.58(G) is whether the claimant presented evidence of new and changed circumstances that developed since the initial denial of PTD compensation. R.C. 4123.58(G). The phrase "new and changed circumstances" is not defined under the statute, but it does have application elsewhere in workers' compensation law. See, e.g., R.C. 4123.57(A) (an application to increase the percentage of permanent-partial-disability ("PPD") compensation must be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination"); *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459, 1998-Ohio 616, 692 N.E.2d 188 (1998) (one prerequisite to the commission's exercise of continuing jurisdiction under R.C. 4123.52 is the presence of "new and changed circumstances").
>
> Because workers' compensation cases are largely fact-specific, what constitutes "new and changed circumstances" is determined on a case-by-case basis. For example, we have

> held that the finding of "new and changed circumstances" under R.C. 4123.57(A) is not improper when a medical report concludes percentage increases beyond what was reported in connection with the initial PPD determination. *State ex rel. Gen. Motors Corp., Chevrolet Motor Div. v. Indus. Comm.*, 54 Ohio St. 2d 333, 335, 376 N.E.2d 1332 (1978). We have also held that the worsening of an existing medical condition often serves as evidence of new and changed circumstances justifying the exercise of continuing jurisdiction to modify a previous order terminating temporary-total-disability compensation. *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 131 Ohio St. 3d 231, 2012-Ohio-542, ¶ 17, 963 N.E.2d 1266, citing *State ex rel. Bing v. Indus. Comm.*, 61 Ohio St. 3d 424, 427, 575 N.E.2d 177 (1991).

*Prinkey II* at ¶ 21-22.

{¶ 30} In the present case, claimant asserts that the issue is whether he submitted enough evidence to enable him to refile for PTD benefits per R.C. 4123.58(G), and whether the commission abused its discretion by entering an order that is not supported by any evidence in the record. Claimant argues that the SHO focused on his physical limitations rather than his psychological conditions (i.e., no new surgeries), and the SHO should have focused on his psychological deterioration, as evidenced by Drs. Stoeckel, Lester, and Halmi. Claimant asserts that three independent medical reports show that he went from mild psychological conditions (Dr. Sinha's December 2020 report) to moderate (Dr. Lester's May 26, 2021, report), to severe and debilitating (Dr. Halmi's August 31, 2023, report). Claimant contends that, given the commission relied only upon his physical conditions in determining whether there were changed circumstances to consider a second filing of a PTD application, the commission abused its discretion by not addressing the new PTD application. Claimant contends that two recent cases render guidance as to whether there is enough evidence to reopen a claim for PTD under R.C. 4123.59(G): *State ex rel. Parrish v. Randolph*, 2024-Ohio-1135 (10th Dist.); and *State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-1137 (10th Dist.) ("*Prinkey I*"), affirmed in *Prinkey II*.

{¶ 31} The only finding from the SHO's December 5, 2023, order that claimant contests in this mandamus action is the SHO's conclusion that his psychological conditions did not worsen during the time between his first PTD application denial in March 2021 and the filing of his second PTD application in March 2023, which relied upon Dr. Stoeckel's

March 18, 2022, report. Thus, the issue here is whether claimant's allowed psychological conditions sufficiently worsened during this period, so as to satisfy the "new and changed circumstances" requirements of R.C. 4123.59(G). In the December 5, 2023, order, the SHO concluded that claimant's allowed psychological conditions did not sufficiently worsen, finding that there have been no amendments or additional medical conditions allowed in the claim since the first application was adjudicated, claimant has not undergone any additional surgeries or had any other substantial medical procedures performed since claimant's first application was adjudicated, claimant has not requested any TTD compensation since the prior PTD compensation hearing, and during this period claimant was engaged only in supportive and maintenance-type psychological medical treatment, often coupled with maintenance medication management.

{¶ 32} The magistrate finds there is some evidence to support the SHO's findings. Claimant's main argument, that his psychological condition progressed incrementally from mild to moderate to severe from 2020 to 2023 is not reflected so distinctly in the record. Initially, although claimant cites as a baseline for his argument Dr. Sinha's December 2020 finding that he was mildly depressed, claimant's October 2020 to January 2021 treatment records from Michael T. Farrell, Ph.D. & Associates consistently indicate moderate depression. Furthermore, in September 2019, before claimant's first PTD application, Dr. Stoeckel found that claimant had severe levels of depression and had developed severe major depressive disorder. The June 2020 treatment records from Michael T. Farrell, Ph.D. & Associates, also termed claimant's depression as severe. Thus, that claimant's depression was mild in 2020 is not consistently documented in the record.

{¶ 33} Claimant also claims that Dr. Lester found in May 2021 that he was moderately impaired but his mental condition progressed to severe, citing Dr. Halmi's August 31, 2023, report. However, Dr. Lester found in May 2021 that claimant had moderate impairment in terms of activities of daily living, social functioning, concentration, persistence, pace, and adaptation, with a combined whole-person impairment rating of 37 percent, while also noting his depression was severe. In his August 31, 2023, report, Dr. Halmi found claimant had moderate impairment in terms of activities of daily living, social functioning, concentration, persistence, pace, and adaptation, with a combined whole-person impairment rating of 38 percent. Thus, claimant's psychological condition appeared

to remain fairly constant from the time of Dr. Lester's May 2021 report to Dr. Halmi's August 2023 report.

{¶ 34} In addition, many of claimant's reported symptoms were consistent from before his first PTD application until the filing of the second PTD application. Prior to claimant's filing of his first application for PTD in June 2020, in September 2019, Dr. Stoeckel reported that claimant feels isolated, has lost weight, has a diminished libido, feels worthless, is irritable, has tearful episodes, has diminished memory and focus, is anxious, and has chronic worry and anxiety. In October 2019, Dr. Harris found claimant has sporadic crying spells, feels depressed all the time, has panic attacks, feels helpless, complains of sleep disturbances, has significant emotional distress, feels pessimistic, is worry prone and ruminative, has anxiety, has somatic delusions, and has unusual thoughts and perceptions. From January to June 2020, Michael T. Farrell, Ph.D. & Associates, found claimant suffered from anger, agitation, depression, hopelessness, racing thoughts, crying spells, helplessness, trouble sleeping, frustration, auditory hallucinations, and feelings of emptiness and worthlessness.

{¶ 35} After claimant filed his first application for PTD compensation in June 2020, claimant continued to suffer from the same or similar symptoms. For instance, from June 2020 until March 2021, when his first PTD application was denied, Michael T. Farrell, Ph.D. & Associates, reported that claimant continued to suffer from anger, agitation, crying spells, feelings of isolation, feelings of emptiness and worthlessness, anxiety, bad premonitions, frustration, and auditory and visual hallucinations. In December 2020, Dr. Sinha found claimant presented static clinical symptoms, noting he suffered from apathy, variable appetite and weight, poor sleep, irritability, crying spells, hopelessness, scattered memory, and difficulty concentrating.

{¶ 36} From March 2021, when his first PTD application was denied, until March 2023, when he filed his second PTD application, claimant's symptoms remained consistent. The treatment records from Michael T. Farrell, Ph.D. & Associates reflect such. From June to August 2021, Michael T. Farrell, Ph.D. & Associates found claimant has increased engagement with loved ones to improve support, has improved mood and sense of hope, feels somewhat more at ease given self-advocacy within the disability network, and has increased hope regarding his post-injury circumstances; however, he still has anxiety,

depression, and racing thoughts. From November 2021 to June 2022, claimant evinced considerable psychological decompensation given his absence from treatment and continued to suffer daily bouts of tearfulness, ruinations on his vocational and personal loses, hopelessness, helplessness, panic attacks, auditory hallucinations, anxiety, hopelessness, lack of purpose, and sadness. However, in July 2022, claimant had markedly improved mood, smiled during the session, felt relief because he was approved for social security, and had positive interactions with his family, but he still had moderate depression, unchanged high anxiety, panic attacks, and auditory and visual hallucinations. From September 2022 to March 2023, claimant still had moderate depression, agitation, unchanged high anxiety, panic attacks, auditory and visual hallucinations, and nightmares.

{¶ 37} Dr. Lester's and Dr. Stoeckel's records show the same symptoms documented by Michael T. Farrell, Ph.D. & Associates during this time. In May 2021, Dr. Lester found claimant is always hopeless and depressed; he has crying spells and decisiveness; he cries a lot and feels restless, shaky, jumpy, irritable, and on edge; and he has loss of pleasure, irritability, loss of interest, feelings of worthlessness and indecisiveness, difficulty sleeping, nervousness, racing thoughts, and fears of the worst happening. In March 2022, Dr. Stoeckel found claimant is depressed all day, every day, and he has fluctuating appetite, diminished libido, feelings of worthlessness and guilt, loss of interest, social withdrawal, irritability, frequent tearful episodes, emotional liability, chronic tension, low frustration tolerance, diminished memory and concentration, indecision, hypervigilance, hyperstartle reaction, avoidance behavior, panic, interpersonal suspiciousness, anger, poor concentration, impulsivity, frequent auditory and visual hallucinations, poor reality testing, and frequent auditory and visual hallucinations associated with his depressive condition.

{¶ 38} In sum, the psychological treatment records from claimant's providers show a consistent bucket of psychological symptoms across several years, including moderate depression, anxiety, auditory and visual hallucinations, anger, feelings of worthlessness, and frequent bouts of crying. Although the symptoms waxed and waned, as Dr. Sinha noted, these records as a whole do not reflect a significant, long-term change in psychological symptoms between the denial of the first application for PTD compensation and the filing and adjudication of the second application for PTD compensation. For these reasons, the commission properly determined that claimant failed to meet the threshold of

new and changed circumstances, as required by R.C. 4123.58(G). Because claimant failed to meet this initial threshold, the commission did not reach the issue of whether claimant was permanently and totally impaired from employment as a result of the allowed psychological conditions in the claim.

{¶ 39} As for claimant's contention that the commission's decision was not consistent with this court's decision in *Prinkey I*, which the Supreme Court of Ohio subsequently affirmed in *Prinkey II*, the magistrate disagrees. In *Prinkey II*, the court addressed whether the commission's decision finding no new and changed circumstances complied with *Noll*, which requires the commission to specifically state what evidence has been relied upon and briefly explain the reasoning for its decision. The court in *Prinkey II* found the SHO's vague statement that the decision was based upon a review of the prior order and the claim file was insufficient to comply with *Noll*. The court pointed out that the SHO did not find that a medical report submitted with a subsequent application for PTD compensation was not credible evidence of new and changed circumstances; instead, the SHO failed to provide any reasoning why the medical reports the claimant submitted were not evidence of new and changed circumstances and failed to cite the evidence on which it relied in reaching its decision. The SHO's nonspecific citation to all the evidence it considered – namely, the previous SHO's order and the state's claim file – was not sufficient. Given that the psychologists' reports in the claim file documented a worsening of the allowed conditions, the court found, the SHO could not have ambiguously relied on the entire claim file in concluding that the claimant failed to present any evidence of new and changed circumstances.

{¶ 40} The circumstances in *Prinkey II* and the present case are somewhat different. The SHO in the present case found claimant did not submit sufficient evidence of new and changed circumstances to warrant adjudicating another application. The SHO reasoned that there have been no amendments allowed in the claim since the first application was adjudicated; claimant has not requested any TTD compensation since the prior PTD compensation hearing; claimant's medical care has been maintenance care and the only real change is that he has aged since the denial of his first application for PTD compensation and was granted social security disability in 2022; and although claimant's argument that his psychological conditions worsened during the time between his first PTD application

denial in March 2021 and Dr. Stoeckel's March 18, 2022, report, claimant's psychological medical treatment during this limited period indicated that claimant was engaged in supportive and maintenance-type psychological medical treatment, often coupled with maintenance medication management, and these medical records are insufficient to find the requisite new and changed circumstances to warrant adjudicating another application. Although the SHO did not specifically cite which records showed claimant was engaged in supportive and maintenance-type psychological treatment and maintenance medication management, the SHO's point here was that the whole of the treatment records from this limited period showed only maintenance treatment. As addressed above, when considering an overview of the psychological evidence submitted during this time, the SHO's assessment of the psychological record is sound. Furthermore, the SHO here provided several reasons why claimant failed to show new and changed circumstances, and the present SHO order is more reasoned than the barebones SHO order in *Prinkey II*.

{¶ 41} For the foregoing reasons, the commission properly concluded that claimant's psychological conditions did not worsen during the time between his first PTD application denial in March 2021 and the filing of his second PTD application in March 2023 and, thus, did not support new and changed circumstances.

{¶ 42} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.